592 So.2d 302 (1991)
BILL WILLIAMS AIR CONDITIONING & HEATING, INC., Appellant,
v.
HAYMARKET COOPERATIVE BANK, Appellee.
No. 91-1488.
District Court of Appeal of Florida, First District.
December 23, 1991.
Rehearing Denied January 28, 1992.
*303 John Paul Howard, Jacksonville, for appellant.
H. Mark Purdy of Watson, Clark & Purdy, Ft. Lauderdale, for appellee.
WEBSTER, Judge.
This is the second time that this case has been before us. In the first appeal, appellant, Bill Williams Air Conditioning & Heating, Inc. ("Bill Williams"), successfully argued for reversal of a partial summary judgment entered against it and in favor of appellee, Haymarket Cooperative Bank ("Haymarket"). Bill Williams Air Conditioning & Heating, Inc. v. Haymarket Cooperative Bank, 566 So.2d 52 (Fla. 1st DCA 1990). By this appeal, Bill Williams seeks review principally of an order denying its motion seeking leave to file a third amended answer and a counterclaim. Concluding that the trial court abused its discretion when it refused to allow Bill Williams to file a third amended answer and a counterclaim, we again reverse.
To appreciate the bases for our conclusion, it is necessary to understand the relatively tortuous procedural history of this case. Haymarket commenced the action on July 21, 1988, when it filed a 5-count complaint, naming some twenty-one defendants, including Bill Williams. Only Count II of that complaint is relevant to this appeal. It sought to foreclose two mortgages on certain real property situate in Alachua County. Bill Williams (like most of the other defendants) was named because it had recorded a Claim of Lien against the property. The complaint alleged that any interest Bill Williams and the other defendants might have in the property was inferior to Haymarket's interest, by virtue of the mortgages.
Bill Williams filed an answer, consisting of nothing more than a general denial, on September 12, 1988. On January 23, 1989, Bill Williams filed an "amended" answer and a cross-claim. (The "amended" answer is identical to the initial answer. It is apparent that the pleading was filed solely for the purpose of asserting the cross-claim.) The cross-claim is in two counts. Count I names all of the remaining defendants as cross-defendants. It seeks a determination that Bill Williams has a valid mechanic's lien, and then an ordering of priorities with regard to the various liens. Count II names only the owner of the property and the general contractor, and seeks money damages for breach of contract.
On March 7, 1989, three of the defendants (all of whom were represented by the same attorney) filed very similar answers, affirmative defenses and counter-claims/cross-claims. Each answer asserted ten affirmative defenses, including the following: that the defendant, by virtue of a valid mechanic's lien, had an interest in the real property which was superior to Haymarket's; an "equitable lien," had an interest in the that Haymarket's "misconduct, improprieties and negligence in monitoring, disbursing and administering the loan funds" estopped Haymarket from claiming priority in the foreclosure; that Haymarket was estopped from foreclosing its mortgages because it had "intentionally and knowingly authorized and permitted [the mortgagors] to embezzle and divert construction loan monies ..."; that, "as a joint venture partner of" the mortgagors, Haymarket breached the contract which the defendant had by failing to pay all sums due; that Haymarket had "converted to its own use" the defendant's "labor, services and materials" by failing to disburse payments according to the mechanic's lien law; and that Haymarket had been "unjustly enriched in the amount of ... the reasonable *304 value of the labor, materials and services furnished by" the defendant. Each counterclaim/cross-claim consisted of at least fifteen counts, including the following: mechanic's lien foreclosure, equitable lien foreclosure, breach of contract, quantum meruit, negligent loan disbursement practices, declaratory judgment, and negligent misrepresentations.
On June 26, 1989, Haymarket filed a motion requesting a partial summary judgment that its mortgage liens were superior to the liens of those defendants, including Bill Williams, who had asserted no affirmative defenses or counterclaims (i.e., all but four of the defendants). Hearing on Haymarket's motion was set for July 18, 1989 (or twenty-two days after the motion had been filed).
On July 17, 1989 (the day before the hearing on Haymarket's motion for partial summary judgment), Bill Williams filed a motion to amend its answer, to which was attached the proposed amendment. The motion asserts that the proposed amendment was intended merely to "clarify" that Bill Williams was "relying on the same facts specifically pleaded by the" four defendants who had filed affirmative defenses and counterclaims. The proposed amendment asserts eight affirmative defenses, each of which is substantively identical in its allegations to the allegations of affirmative defenses previously raised by other defendants (although not all of the affirmative defenses raised by those other defendants are contained in Bill Williams' proposed amendment).
At the hearing on July 18, 1989, the trial court granted Bill Williams' motion for leave to amend; however, it then proceeded to include Bill Williams in the partial summary judgment. Bill Williams appealed to this Court, which concluded that Haymarket had done nothing to meet its "burden of establishing that [Bill Williams'] affirmative defenses were devoid of material issue of fact or legally insufficient" and, therefore, "reversed ... and... remanded for further proceedings... ." 566 So.2d at 54.
On June 15, 1990, while the first appeal was pending, the trial court entered a final judgment of foreclosure in favor of Haymarket. The final judgment recited that the counterclaims filed by the defendants against whom summary judgment had not previously been entered had "been settled, resolved and dismissed." The property was purchased by Haymarket at the public sale, and a Certificate of Title was issued on August 10, 1990, two weeks before this Court's opinion on the first appeal was issued, and about a month before this Court's Mandate issued. Thus, the result of this Court's decision on the first appeal was to reinstate Bill Williams as a defendant to a foreclosure claim after a final judgment had been entered, the property had been sold and a Certificate of Title had been issued.
On October 26, 1990, Haymarket filed a "renewed" motion for summary judgment; and on November 30, 1990, Haymarket filed an affidavit in support of its "renewed" motion. On December 14, 1990, Haymarket served by mail a notice setting a hearing on the "renewed" motion for January 25, 1991.
On January 2, 1991, Bill Williams filed a motion seeking leave to file a third amended answer and a counterclaim, to which was attached the proposed amendment. Of the seven affirmative defenses asserted, six are substantively identical to affirmative defenses raised in the previous amended answer; the only "new" affirmative defense sought to be asserted was that Bill Williams had a valid mechanic's lien on the real property, by virtue of which its interest in the property was superior to Haymarket's. (An identical defense had been raised by the "settling" defendants.) In addition, two affirmative defenses asserted in the previous amended answer were not included in the latest proposed amendment. The only arguably "new" matter, in terms of substance, contained in the latest proposed amendment was a 7-count counterclaim. (Bill Williams had not previously filed, or attempted to file, a counterclaim.) However, each count is substantively identical (down to the wording) to a corresponding count previously asserted by each of the four "settling" defendants. In fact, *305 the only substantive difference between the counterclaim Bill Williams sought leave to file and the counterclaims previously filed by the "settling" defendants was that Bill Williams had elected not to include eight counts included in the "settling" defendants' counterclaims, each of which alleged an intentional tort (e.g., fraud, embezzlement, civil theft, racketeering).
In its motion seeking leave to amend further, Bill Williams asserted that false answers to interrogatories which it had received in 1988 from Haymarket had caused Bill Williams not to file a counterclaim sooner. Bill Williams further asserted that, after summary judgment had been entered against it and while the appeal was pending before this Court, the defendants who remained in the case (i.e., those who had filed affirmative defenses and counterclaims) had engaged in extensive discovery, which revealed that Haymarket's 1988 answers to interrogatories had been false, and that Bill Williams had a viable counterclaim. The motion also pointed out that the proposed amendment did not raise any new issues and, therefore, would not result in delay (presumably because its affirmative defenses and counterclaim were substantively identical to defenses and counterclaims previously asserted by other defendants).
A hearing was held on both Bill Williams' motion for leave to amend further and Haymarket's "renewed" motion for summary judgment on January 25, 1991. After having received letter memoranda from the parties, on March 5, 1991, the trial court entered an order denying Bill Williams' motion for leave to amend further. Although the order does not expressly state the basis for denying leave to amend further, the language used suggests that the bases for the order were abuse of the privilege and unreasonable delay. On the following day, the trial court also denied Haymarket's "renewed" motion for summary judgment. Then, on April 17, 1991, Haymarket filed a "Notice of Voluntary Dismissal" of the "cause," and the trial court signed an order declaring that the "cause" was "dismissed." This appeal followed.
Rule 1.190(a), Florida Rules of Civil Procedure, required Bill Williams to seek leave of court before filing its third amended answer and counterclaim. That Rule states that "[l]eave of court shall be given freely when justice so requires." "Ordinarily, a ruling on a motion to amend the pleadings rests within the sound discretion of the trial court, ... which will not be overturned unless abuse is demonstrated." Holy Temple Church of God in Christ, Inc. v. Maxwell, 578 So.2d 877, 878 (Fla. 1st DCA 1991). However, "all doubts should be resolved in favor of allowing amendment. It is the public policy of this state to freely allow amendments to pleadings so that cases may be resolved upon their merits." Adams v. Knabb Turpentine Co., 435 So.2d 944, 946 (Fla. 1st DCA 1983). Courts should be especially liberal when leave to amend "is sought at or before a hearing on a motion for summary judgment." Montero v. Compugraphic Corp., 531 So.2d 1034, 1036 (Fla. 3d DCA 1988). As a general rule, refusal to allow amendment of a pleading constitutes an abuse of discretion unless it clearly appears that allowing the amendment would prejudice the opposing party; the privilege to amend has been abused; or amendment would be futile. See New River Yachting Center, Inc. v. Bacchiocchi, 407 So.2d 607 (Fla. 4th DCA 1981), review denied, 415 So.2d 1360 (Fla. 1982).
Bill Williams' proposed third amended answer added nothing new to the issues involved in the case. It is apparent that the principal reason why the motion was filed was so that Bill Williams might (for the first time) assert a counterclaim against Haymarket. We fail to see how the proposed amendment could have prejudiced Haymarket; constituted an abuse of the privilege to amend; or was futile.
Bill Williams' counsel argued in his letter memorandum to the trial court that, although in March 1989 three defendants (who were represented by the same attorney) filed counterclaims which included counts substantively the same as those which Bill Williams sought leave to file *306 almost two years later, Bill Williams did not have access to the facts upon which the other defendants' counterclaims were based (many of which were known only by one or more of those defendants) at any time before the trial court entered summary judgment against Bill Williams on July 21, 1989. According to Bill Williams' counsel, he was not prepared to make such allegations without first being satisfied that they were supported by the facts. It was only after summary judgment had been entered against Bill Williams, while the first appeal was pending, that discovery commenced in earnest regarding the allegations made by the other defendants in their counterclaims. After we issued the Mandate on the first appeal, Bill Williams' counsel attempted to obtain copies of the numerous depositions that had been taken, so that he might read them. After some initial difficulties which caused some delay (lack of cooperation from other counsel and the need to have at least one of the depositions transcribed), Bill Williams' counsel finally obtained and read all of the depositions. As soon as he had finished reading the depositions, he concluded that grounds existed for a counterclaim, which he prepared and sought leave to file.
Haymarket's response did not specifically deny any of the representations made by Bill Williams' counsel. Instead, it asserted that, "[f]or whatever reason, Bill Williams apparently made a conscientious decision to do as little as possible until September, 1990." The fact of the matter, however, is that between July 1989 and September 1990, Bill Williams was busy appealing a summary judgment which clearly never should have been entered but which, nevertheless, Haymarket strenuously attempted to sustain.
Haymarket argued to the trial court that it had been prejudiced because it was being forced to continue to litigate the matter despite the facts that a final judgment had been entered and the property had been sold. The obvious response to this contention is that Haymarket finds itself in its present predicament not because of anything Bill Williams did or failed to do, but because it urged the trial court to enter a summary judgment against Bill Williams, which it should have known was error. Although not argued by Haymarket, it is apparent that each count of the proposed counterclaim is substantively identical to a corresponding count in the counterclaims of the four defendants, which counterclaims the final judgment of foreclosure recites had "been settled, resolved and dismissed." Moreover, it is equally apparent that each count of the proposed counterclaim corresponds to, and would require generally the same proof as, one or more of the affirmative defenses asserted in Bill Williams' second amended answer. Given such facts, it is very difficult to perceive how Haymarket could possibly have been prejudiced by the proposed counterclaim, or how any significant delay would have resulted. See generally Azemco (North America), Inc. v. Brown, 553 So.2d 1245 (Fla. 3d DCA 1989); Walker v. Senn, 340 So.2d 975 (Fla. 1st DCA 1976).
In addition, we believe that at least some, if not all, of the causes of action asserted in the proposed counterclaim met the "transaction or occurrence test" applied in Yost v. American National Bank, 570 So.2d 350 (Fla. 1st DCA 1990), and, therefore, were compulsory, rather than permissive, counterclaims. See Fla.R.Civ.P. 1.170. Rule 1.170(f), Florida Rules of Civil Procedure, provides that, "[w]hen a pleader fails to set up a counterclaim ... through oversight, inadvertence or excusable neglect or when justice requires, the pleader may set up the counterclaim ... by amendment with leave of the court." Numerous decisions suggest that this provision should be interpreted especially broadly when a compulsory counterclaim is involved; and that, in such a case, denial of leave to file the counterclaim will almost always be found to be an abuse of discretion. See, e.g., Moline v. Square Builders of Ormond Beach, Inc., 557 So.2d 963 (Fla. 5th DCA 1990); Advanced Energy Concepts, Inc. v. Waugh, 510 So.2d 1081 (Fla. 1st DCA 1987); Branscomb v. Ploof Truck Lines, Inc., 454 So.2d 59 (Fla. 1st DCA 1984); Bratcher v. Wronkowski, 417 So.2d 1132 (Fla. 5th DCA), review denied, 424 So.2d 760 (Fla. *307 1982); Romish v. Albo, 291 So.2d 24 (Fla. 3d DCA 1974).
Based upon the foregoing analysis, we conclude that the trial court abused its discretion when it refused to allow Bill Williams to file its proposed third amended answer and counterclaim. Therefore, we reverse, and remand with directions that the trial court permit Bill Williams to file its third amended answer and counterclaim.
REVERSED and REMANDED, with directions.
SHIVERS and ZEHMER, JJ., concur.