635 So.2d 1070 (1994)
PLUESS-STAUFER INDUSTRIES, INC., Appellant,
v.
ROLLASON ENGINEERING AND MANUFACTURING, INC., Appellee.
No. 93-1356.
District Court of Appeal of Florida, Fifth District.
April 29, 1994.
Rehearing Denied June 28, 1994.
Michael M. Bell and Andrew J. Leeper of Hannah, Marsee & Voght, P.A., Orlando, for appellant.
Bruce W. Flower, Maitland, and Leslie W. Jacobs and James B. Niehaus of Thompson, Hine and Flory, Cleveland, OH, for appellee.
W. SHARP, Judge.
Pluess-Staufer Industries (PSI), a Vermont corporation, appeals from a nonfinal order,[1] granting in part and denying in part, its motion to dismiss Rollason's third amended complaint. The order dismissed the complaint for failure to state a cause of action, but gave Rollason twenty days to file a fourth amended complaint. It also found the complaint pled sufficient jurisdictional facts under the long-arm statute[2] to establish personal jurisdiction over PSI in Florida. PSI argues that it is not subject to personal jurisdiction in Florida. We agree and reverse.
This record establishes that Rollason is a Florida corporation engaged in the manufacture and rebuilding, inter alia, of can-making equipment. On May 4, 1984, Rollason entered into a contract with Callahan AMS, Inc., a Delaware corporation, to purchase substantially all of the assets of Callahan.[3] PSI was the parent corporation of Callahan and owned all of its stock.
Rollason initially contacted Callahan as a prospective purchaser. Negotiations commenced, both over the phone and through the mail. The final session of negotiations was conducted in Florida and lasted two days. At the conclusion of these negotiations, *1071 the contract between the parties was executed (the Agreement) and Rollason tendered its initial payment to Callahan. PSI executives were present and took part in the negotiation process, but PSI was only a limited signatory to the Agreement.
In 1983, Callahan had entered into an agreement (the letter agreement) with Caemi International and Swift Armour, in which Callahan was to receive periodic payments totaling $1,260,000.[4] PSI had guaranteed repayments, if any, to Caemi and Swift, on behalf of Callahan. In the Agreement between Callahan and Rollason, Callahan assigned the payments it was to receive under the letter agreement, to Rollason. Since PSI had guaranteed the repayments of the sums received by Callahan, and Callahan had assigned them to Rollason, the Agreement provided that Rollason would guarantee any repayments PSI was required to make.
Part 2 of the Agreement pertained to two separate aspects of the total agreement, one with respect to Callahan (indemnification of Rollason), and one with respect to PSI (guaranty by Rollason in favor of PSI). That part involving PSI provided:
Seller's parent corporation ("PSI") has guaranteed certain payments to be made by Seller under the aforementioned Agreement [agreement between Callahan and Caemi/Swift]... . In the event PSI is called upon to make payment under the terms of the Guaranty, it will do so to the extent of its obligations thereunder but shall first communicate to Purchaser [Rollason] the fact, timing, necessity and amount of such payment and Purchaser promptly shall repay and hereby irrevocably agrees promptly to repay PSI the amount of any such payment. In addition to the foregoing, in consideration of the sale hereunder and Purchaser's receipt of payments under the Agreement, Purchaser hereby assumes all obligations of PSI under the Guaranty and agrees fully, in all respects, to stand in PSI's place and stead thereunder and in connection therewith. PSI joins in the execution of this Agreement to the extent of its obligations under the Guaranty referenced above, to the extent of the aforesaid sum or sums acknowledged by Seller to have been received, and for the purposes of obtaining the benefit of Purchaser's assumption as hereinabove set forth. (emphasis added).
The Agreement also provided for Callahan to indemnify and defend any claims asserted against Rollason arising from the use of equipment which was completed and sold by Callahan on or before May 4, 1984, the execution date of the Agreement. The language of the Agreement reveals that only Callahan agreed to indemnify Rollason.[5]
According to the Agreement, Callahan's assets were sold "as is" or "where is." Rollason was required to take delivery of the equipment in Vermont, which was apparently the site of Callahan's plant. The Agreement stated that it was executed, delivered and intended to be performed in Vermont and governed under Vermont law.
This case has had a long procedural history. In December 1990, Rollason filed a complaint in Seminole County Circuit Court against PSI seeking a declaratory judgment that PSI defend and indemnify it in a pending New Jersey lawsuit known as the "Farmer litigation."[6] On January 31, 1991, a final default judgment was entered in Rollason's favor because PSI failed to file an answer. PSI then filed a motion for relief from judgment, based on lack of jurisdiction. The trial judge denied this motion, and PSI appealed.
This court reversed. In setting aside the default judgment as void, we noted that the complaint lacked sufficient jurisdictional allegations to bring it within the ambit of the long-arm statute. Pluess-Staufer Industries, Inc. v. Rollason Engineering & Manufacturing, *1072 Inc., 597 So.2d 957 (Fla. 5th DCA 1992), rev. denied, 606 So.2d 1166 (Fla. 1992).[7] We remanded to allow Rollason to amend its complaint to better plead its basis for asserting Florida's personal jurisdiction over PSI.
On remand, the trial judge set aside the default judgment. Rollason filed an amended complaint.[8] PSI again challenged Florida's jurisdiction by filing a motion to dismiss and strike the complaint which was denied on the personal jurisdiction issue. This appeal followed.
In determining whether long-arm jurisdiction is appropriate, two inquiries must be made: (1) whether sufficient facts are alleged to bring the cause within the ambit of the long-arm statute; and if so, (2) whether sufficient minimum contacts are demonstrated. Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla. 1989); Magic Pan International, Inc. v. Colonial Promenade, 605 So.2d 563 (Fla. 5th DCA 1992). Long-arm statutes are to be strictly construed. Cosmopolitan Health Spa, Inc. v. Health Industries, Inc., 362 So.2d 367 (Fla. 4th DCA 1978). See also, Core Industries v. Agostinelli, 591 So.2d 207, 210 n. 4 (Fla. 4th DCA 1991) (Farmer, J., dissenting); Bloom v. A.H. Pond Co., Inc., 519 F. Supp. 1162 (S.D.Fla. 1981).
The only relevant[9] portion of the long-arm statute involved here is section 48.193(1)(g), Florida Statutes (1991). It provides that:
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative, to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

* * * * * *
(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state. (emphasis added)
We conclude that the facts alleged are not sufficient to bring this cause within the ambit of the long-arm statute. The most favorable light in which this case may be viewed is that PSI engaged in negotiations in Florida which culminated in the execution of the Agreement in Florida. But execution of a contract in Florida by a nonresident, standing alone, is insufficient to confer jurisdiction under the long-arm statute. Osborn v. University Society, Inc., 378 So.2d 873 (Fla. 2d DCA 1979), approved, Venetian Salami. The Agreement provided for performance in Vermont, and Rollason was required to take possession of the equipment in Vermont. It specifically stated it was to be governed under Vermont law.
PSI was a limited signatory to the agreement. It apparently signed only to bind Rollason to guarantee its repayment for any sums it might be required to make for Callahan to Caemi Internation and Swift Armour. *1073 PSI was not a guarantor[10] of Callahan's obligations to Rollason under the Agreement. Rather, Rollason was a guarantor under the letter agreement. The record is totally devoid of any evidence that PSI had any duty or obligation to indemnify Rollason. That obligation belonged solely to Callahan under the Agreement.
Section 48.193(1) requires that a cause of action must arise from doing one of the listed acts in that section. In this case, the required act could only have been a breach of duty PSI owed Rollason. The Agreement does not impose any duty of indemnification or otherwise on PSI.
Rollason has consistently failed to plead any other basis, other than the Agreement, to show PSI had an obligation owed to it. Rollason argues that because Callahan had an obligation to indemnify it, that obligation was somehow transferred to PSI because PSI was the sole shareholder of Callahan. But after filing four complaints, Rollason has failed to plead facts which would support any theory of personal jurisdiction over PSI. In light of our analysis of this case, continued amendments of the complaint would be futile. See Spradley at 613; Bill Williams Air Conditioning & Heating v. Haymarket Co-op Bank, 592 So.2d 302 (Fla. 1st DCA 1991).
REVERSED.
COBB and DIAMANTIS, JJ., concur.
NOTES
[1] We have jurisdiction under Fla.R.App.P. 9.130(a)(3)(C)(i).
[2] § 48.193, Fla. Stat. (1991).
[3] The purchase price was $2,643,700.00. It included: All machines, tools and equipment; all office furniture and machines; all raw materials; all work in process; and Callahan's trade names.
[4] This was known as the "Easy Open End Project."
[5] Page one of the Agreement states that Callahan is to be referred to as "Seller," while Rollason is to be referred to as "Purchaser." And paragraph 2 provides:

Seller ... hereby agrees to defend, indemnify and hold Purchaser harmless from all claims, actions, causes of action, complaints, losses or liabilities arising or claimed to arise from such completed work; ... . (emphasis supplied)
[6] Callahan was dissolved in 1986, and its remaining assets were distributed to PSI.
[7] In that appeal, this court observed that the complaint was "totally devoid of any allegation from which any basis whatsoever for jurisdiction could be gleaned or even inferred."
[8] The relevant portions of the Third Amended Complaint, cited as providing a jurisdictional basis, are:

6. Initially, Pluess-Staufer, Callahan and Rollason negotiated over the telephone and through correspondence. The bulk of the negotiations, however, occurred during a two day face-to-face negotiating session which took place in Florida in May 1984. Representatives from both Pluess-Staufer and Callahan, including Pluess-Staufer's Treasurer, travelled to Florida and were present for and actively participated in the negotiations with the Rollason personnel. The only face-to-face negotiations among the parties were the negotiations that took place in Florida.
7. On May 4, 1984, at the conclusion of negotiations in Florida, representatives of Pluess-Staufer, Callahan and Rollason all executed in Florida an agreement entitled "Agreement of Sale and Purchase of Assets" (the "Agreement") pursuant to which Callahan sold to Rollason certain of Callahan's assets ... Pluess-Staufer also negotiated for and obtained from Rollason a commitment by Rollason to assume certain of Pluess-Stauffer's obligations. At the same time, Rollason delivered in Florida a substantial cash payment to the Pluess-Staufer and Callahan representatives.
[9] It is clear that PSI did not operate nor conduct a business in Florida, nor engage in substantial activities within the state. § 48.193(1)(a) and (2). Nor did PSI contract to insure a party in this state under 48.193(1)(d), as that section refers to risk insurance. Laser Elect. Contractors, Inc. v. C.E.S. Industries, Inc., 573 So.2d 1081 (Fla. 4th DCA 1991).
[10] But in any event, the status of being a guarantor, without further substantial acts is insufficient to trigger jurisdiction over a nonresident. Hotchkiss v. FMC Corp., 561 So.2d 1261 (Fla. 2d DCA 1990).