LEWIS, J.
Petitioner Karen Capone seeks review of the decision of the Third District Court of Appeal in Capone v. Philip Morris U.S.A. Inc., 56 So.3d 34 (Fla. 3d DCA 2010), based upon express and direct conflict with the decision of the Second District Court of Appeal in Niemi v. Brown & Williamson Tobacco Corp., 862 So.2d 31 (Fla. 2d DCA 2003). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
FACTS AND PROCEDURAL HISTORY
Proceedings in the Circuit Court
This case has a somewhat convoluted procedural history. We must analyze this history in detail to address Respondent Philip Morris USA, Inc.’s (“Philip Morris”) contention that the Third District Court of Appeal lacked jurisdiction to consider Capone’s appeal and, therefore, the further contention that this Court should discharge jurisdiction as improvidently granted.
In 2005, Frank and Karen Capone filed an action against tobacco manufacturers Philip Morris and Brown and Williamson Tobacco Corporation alleging that their tobacco products caused physical bodily injury to Frank in the form of “lung cancer and/or other malignancies, shortness of breath, pneumonia, chronic coughing, chronic obstructive pulmonary disease, irreversible small and large airway obstruction, permanent cellular damage, inheritable genetic changes in lung and airway cells, cardiovascular injuries, and other injuries.” The Capones alleged claims for negligence, strict liability, conspiracy to fraudulently misrepresent, and conspiracy to fraudulently conceal, as well as a claim by Karen for loss of consortium. On July 18, 2006, Frank Capone died.
On January 14, 2008, Karen, in her capacity as personal representative of the estate of Frank Capone, filed a motion to amend the complaint to name additional defendants and to allege inclusion in the class impacted by this Court’s decision in Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006).[1] Karen attached an amended complaint to the motion which alleged claims of strict liability, breach of express and implied warranties, civil conspiracy to fraudulently conceal, fraudulent concealment, and negligence. Although *366 Karen sought “all damages allowed by the Florida Wrongful Death Act” and stated that, as a result of the defendants’ actions, “Plaintiffs Decedent was injured and died,” the amended complaint also contained the following language:
Alternatively, in the event one or more of the Defendants contend that Decedent died of some cause unrelated to smoking cigarettes, Plaintiff asserts a claim for survival damages pursuant to Section 46.021, Florida Statutes, as Decedent suffered past physical and mental and emotional pain and suffering, loss of enjoyment of life and medical expense for care and treatment. During the period before Decedent died and in conjunction with an alternative survival claim, Plaintiff also asserts a loss of consortium claim and alleges as a direct and proximate result of the allegations contained in this Complaint, Plaintiff or Plaintiffs’ [sic] Decedent’s spouse has suffered and will continue to suffer the loss of services, consortium, and care and comfort of Decedent’s society because of his/her injuries, disabilities and/or death, and has incurred expenses for medical treatment rendered to Decedent.
Karen subsequently filed a motion to substitute herself as party plaintiff after Frank’s death and her appointment as personal representative of Frank’s estate.
On February 19, 2008, Philip Morris filed a response in opposition to Karen’s motions and also filed a Motion to Dismiss Complaint. Philip Morris contended that the Florida Wrongful Death Act (the Act) prohibits conversion of a personal injury action into a wrongful death action when the injuries to a party plaintiff result in his or her death. In support of this contention, Philip Morris relied upon section 768.20, Florida Statutes (2008), which provides that “[w]hen a personal injury to the decedent results in death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate.” Philip Morris contended that because the Capones’ personal injury action was extinguished upon the death of Frank, the complaint could not be amended to state a cause of action for wrongful death. According to Philip Morris, the decision of the Fifth District Court of Appeal in Taylor v. Orlando Clinic, 555 So.2d 876 (Fla. 5th DCA 1989), required that Karen file a new action for wrongful death separate from the pending action for personal injury. On September 16, 2008, the circuit court denied Karen’s motions to amend and to substitute. In the same order, the circuit court dismissed the entire action on the basis that it had become barred by the Act.
Thereafter, Karen filed a “Motion to Reconsider and/or to Vacate” the September 16 order. The motion in the record before this Court includes a certificate of service that provides “I certify that a true copy of this Motion to Reconsider and/or to Vacate has been served on all counsel of record by U.S. Mail on September 24, 2008.” In a memorandum of law that accompanied the motion, Karen asserted that she was not seeking to convert the personal injury action into a wrongful death action. Instead, she was
leaving room for the possibility that Plaintiff may have an alternative claim for survival damages pursuant to Section 46.021, Florida Statutes, in the event the Plaintiff does not succeed in proving at trial that the alleged cigarette-related diseases and/or medical conditions caused by the Defendants were the cause or substantial cause of Decedent FRANK CAPONE’s death. As in any products liability case, because these different theories of recovery are complementary, they should be present *367 ed together in order to address and resolve all pertinent issues at trial.
On November 6, 2008, the circuit court held a hearing on the “Motion to Reconsider and/or to Vacate.”
During the hearing, Philip Morris contended that the motion was not timely served pursuant to Florida Rule of Civil Procedure 1.530[2] because the envelope in which counsel for Philip Morris received the motion was postmarked from Miami on September 29, 2008 — three days after the ten-day deadline to serve a motion for rehearing had expired — and the certificate of service attached to the copy of the motion was neither signed nor dated. Conversely, counsel for Karen asserted that the motion to reconsider was timely served on September 24, 2008 — only eight days after the trial court’s September 16, 2008, order of dismissal — by mail from Charlottesville, Virginia. Karen’s counsel was perplexed with regard to the origin of the envelope with the September 29 postmark. He demonstrated that the motion to reconsider could not have been mailed from Virginia on September 29 because it was received by the circuit court in Miami on that same date.[3] On May 8, 2009, the circuit court issued an order that vacated the September 16, 2008, order which had dismissed the case. The circuit court also granted Karen’s previously-filed motions to amend the complaint and to substitute parties.
On May 18, 2009, Philip Morris filed with the circuit court a Motion to Vacate the May 8 order, again asserting that Karen’s initial motion for reconsideration was not timely served. Philip Morris also contended that the circuit court had properly dismissed the personal injury case on the basis that section 768.20 requires that a wrongful death.action be filed as a new and separate action that cannot be presented in an amendment to an existing case. On September 2, 2009, the circuit court through a different judge granted Philip Morris’ motion and vacated the May 8, 2009, order.[4] This order had the operative effect of dismissing Karen’s action against Philip Morris.
On September 8, 2009, Karen served three motions upon Philip Morris: a motion for rehearing styled as a “Verified Motion to Vacate and/or Reconsider”; a Motion for Relief from Judgment filed pursuant to Florida Rule of Civil Procedure 1.540(b), in which Karen asked the circuit *368 court to set aside the dismissal order on the basis of mistake or inadvertence; and a Motion to Correct Scrivener’s Error. On November 4, 2009, the circuit court denied the three motions in a single, unela-borated order, which had the operative effect of rendering the dismissal final and denying rule 1.540 relief. On December 4, Karen filed a notice of appeal seeking review of the dismissal, which became final upon entry of the order that denied Karen’s motion for rehearing and the denial of rule 1.540 relief.
Proceedings in the District Court
On appeal, the Third District affirmed the order of the circuit court which dismissed the pending action. See Capone, 56 So.3d at 36-37 (concluding that Karen’s action was “correctly dismissed”). The district court first concluded that Karen’s motion to reconsider the September 16, 2008, order of dismissal was untimely on the basis that the certificate of service on the motion served upon counsel for Philip Morris was blank, and “Capone could not point to anything to show that the motion was served within the ten-day time period specified by Florida Rule of Civil Procedure 1.530(b).” Id. at 35. The district court then held that, based upon section 768.20, the original personal injury action filed by the Capones could not be amended after Frank’s death to include a wrongful death claim:
Florida law establishes that a personal injury claim is extinguished upon the death of the plaintiff, and any surviving claim must be brought as a new and separate wrongful death action — it cannot be brought as an amendment to a personal injury action. See § 768.20 (“[W]hen a personal injury to the decedent results in death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate”).
Id. at 36 (footnote omitted).
Express and Direct Conflict
We granted review of Capone on the basis that it expressly and directly conflicts with Niemi, 862 So.2d at 34, in which the Second District held that a personal injury action can be amended after the death of a party plaintiff to add a wrongful death claim and, further, that the personal representative of the decedent’s estate may be substituted as a party in the pending action. In Niemi, Peter and Lena Niemi filed an action against defendants Brown and Williamson Tobacco Corporation and R.J. Reynolds Tobacco Company alleging that Peter had sustained bodily injury from smoking the defendants’ cigarettes. See id. at 32. Lena sought damages for loss of consortium. See id. While the case was pending, Peter died; however, the cause of his death was not listed in the record. See id.
Lena and another individual thereafter filed a motion alleging that they had been appointed co-personal representatives of Peter’s estate and asked that they be substituted as plaintiffs in the action in place of Peter. See id. at 33. The circuit court denied the motion, concluding that the action had automatically. terminated at the time of Peter’s death. See id. Lena sought review of the circuit court’s denial of the motion to substitute, which the Second District treated as a petition for writ of certiorari. See id. at 32-34. The Second District granted the petition, concluding that the circuit court departed from the essential requirements of law when it denied the request of Lena and the other co-personal representative to substitute themselves as plaintiffs in the pending personal injury action. See id. at 34.
*369 In reaching this determination, the Second District examined the term “abate” in section 768.20 as it relates to a personal injury action upon the death of a party plaintiff, and concluded that “the transition from life to death for a personal injury action is not as simple as the defendants wish it to be.” Id. at 88. The Second District explained:
“Abatement” is a common-law term with various definitions. It is often used to signify that an action has been extinguished or ended. See generally 1 Am.Jur.2d Abatement, Survival and Revival § 1 (1994). We will not attempt a precise definition of “abate” for purposes of section 768.20. As a matter of legal theory, “abatement” may bring a pending action to an end or extinguish it, but this theoretical event does not automatically terminate a lawsuit, which is represented by a physical file in the courthouse. A pending lawsuit does not simply self-destruct like the secret message on a rerun of “Mission Impossible.” In some fashion, it must be dismissed by court order. Moreover, pursuant to section 768.20, a personal injury action only “abates” if it is first determined that the personal injury resulted in the plaintiffs death. Such a determination may be established by the pleadings or by the finder of fact. No such determination has been made by the circuit court in this case.
Id. The district court then noted that because the cause of Peter’s death was not clear from the record, the pleadings did not permit the personal injury action to be terminated under section 768.20. See id. at 34. Further, the personal injury action could not be dismissed based upon section 46.021, Florida Statutes (2002), which provides that “[n]o cause of action dies with the person. All causes of action survive and may be commenced, prosecuted, and defended in the name of the person prescribed by law.” Id. at 33-34. The Second District concluded that substitution of parties was necessary because, otherwise, “the trial court would never be able to resolve this action by correctly applying sections 768.20 and 46.021 because there would never be a party who could proceed or against whom a dismissal could be entered.” Id. at 34. The Second District also noted that, where the decedent’s cause of death is not agreed upon by the parties, the personal representative of an estate may need to plead both a personal injury action and an alternative wrongful death action. See id.
ANALYSIS
Timeliness
As a preliminary matter, we address the assertion by Philip Morris that Karen’s notice of appeal was not timely filed and, therefore, the Third District lacked jurisdiction to consider the appeal. See generally Savoie v. State, 422 So.2d 308, 310 (Fla.1982) (holding that once this Court has accepted jurisdiction to resolve a legal conflict, “we may, in our discretion, consider other issues properly raised and argued”).
It is well-established that a notice of appeal must be timely filed with the appropriate court for jurisdiction to be conferred upon an appellate tribunal. See, e.g., State ex rel. Diamond Berk Ins. Agency v. Carroll, 102 So.2d 129, 131 (Fla.1958). Florida Rule of Appellate Procedure 9.110(b) provides that the jurisdiction of an appellate court to review the final order of a lower tribunal is invoked by filing with the clerk of the lower tribunal a notice “within 30 days of rendition of the order to be reviewed.” Under the appellate rules, “[a]n order is rendered when a signed, written order is filed with the clerk of the lower tribunal.” Fla. R.App. P. *370 9.020(h). However, an authorized and timely motion for rehearing (or other motion designated under this rule) will toll the time for filing a notice of appeal until the court disposes of the motion. See id. Conversely, if a motion for rehearing is not timely served, then the time for filing the notice of appeal is not tolled. See Fire & Cas. Ins. Co. of Connecticut v. Sealey, 810 So.2d 988, 991 (Fla. 1st DCA 2002). Under the Florida Rules of Civil Procedure, for a motion for rehearing to be timely, it must be “served not later than 10 days after ... the date of filing of the judgment in a non-jury action.” Fla. R. Civ. P. 1.530(b).
Here, Philip Morris contends that the Third District lacked jurisdiction to consider the appeal below on two bases. First, it contends that Karen’s initial motion to reconsider was not timely served because the envelope in which it arrived was postmarked September 29, 2008 — thirteen days after the circuit court’s September 16, 2008, dismissal order — and the certificate of service on the copy of the motion that Philip Morris received was blank. Therefore, according to Philip Morris, the time for filing the notice of appeal was not tolled and, because Karen filed her notice of appeal more than one year after rendition of the circuit court dismissal order, her appeal was untimely under rule 9.110(b). Second, Philip Morris contends that the motions served by Karen on September 8, 2009, in response to the circuit court’s September 2, 2009, order, which had the operative effect of again dismissing her case, were not “authorized” under rule 9.020(h), and therefore did not toll the time for filing a notice of appeal. See generally Wagner v. Bieley, Wagner & Assocs., Inc., 263 So.2d 1, 3 (Fla.1972) (“An unauthorized motion not permitted by the Rules ... would have no effect on rendition and would thus have no effect on the time for filing notice of appeal.”). We reject both assertions.
With regard to Karen’s initial motion to reconsider, as previously discussed, the record before this Court contains a copy of the motion with a signed certificate of service that provides “I certify that a true copy of this Motion to Reconsider and/or to Vacate has been served on all counsel of record by U.S. Mail on September 2008.” (Emphasis supplied.) Then Florida Rule of Civil Procedure 1.080(f) provided:
(f) Certificate of Service. When any attorney shall certify in substance:
“I certify that a copy hereof has been furnished to (here insert name or names) by (delivery) (mail) (fax) on .(date).
Attorney”
the certificate shall be taken as prima facie proof of such service in compliance with these rules.
(Emphasis supplied.)[5] Thus, pursuant to the applicable Florida Rule of Civil Procedure, the presence of this signed certificate of service in the record constitutes prima facie proof that Karen served her motion for rehearing on September 24, 2008, two days before the deadline for service under Florida Rule of Civil Procedure 1.530(b).
Although Philip Morris relies upon the September 29, 2008, postmark on the en *371 velope in which its counsel’s copy of the motion was received, this alone does not rebut the presumption that the motion was timely served as certified. Indeed, the Third District has previously rejected claims of untimeliness based upon a postmark that falls after the deadline of service where a certificate of service indicates that the motion was timely served. See Mr. Martinez of Miami, Inc. v. Ponce De Leon Fed. Sav. & Loan Ass’n, 558 So.2d 153, 154 (Fla. 3d DCA 1990) (“We disagree with the trial court’s implicit determination, made without the benefit of an evi-dentiary hearing, that a postal cancellation date two days later than the certificate date is sufficient to rebut the prima facie proof of compliance with Rule 1.080(f).”); Nesslein v. Nesslein, 672 So.2d 582, 583 (Fla. 3d DCA 1996) (“Ms. Nesslein’s motion was timely served, as was evidenced by the certificate of service on the motion itself.... A postal cancellation date is not sufficient to rebut the prima facie proof of compliance with Rule 1.080(f).”). Since a certificate of service in the record on appeal provides that the original motion for rehearing was served by mail on September 24, 2008, we conclude that Karen’s motion was timely served pursuant to rule 1.080(f), and the time for filing a notice of appeal of the September 16, 2008, dismissal order was tolled.
Moreover, although the envelope in which counsel for Philip Morris received the motion for rehearing was postmarked September 29 from Miami, Florida — not Charlottesville, Virginia — the record clearly provides an explanation for this anomaly. One of the attorneys who was representing Philip Morris was Bruce A. Weil, who is a member of the law firm Boies, Schiller & Flexner LLP.[6] According to the September 8, 2009, “Verified Motion to Vacate and/or Reconsider”:
The original envelope containing the Motion to Reconsider was mailed on September 24, 2008. On Monday September 29, 2008 [Karen’s counsel] received a telephone call from Jack Brum-baugh of the Richman Greer firm. The envelope had been mis-delivered to Kenneth Weil, a shareholder of that firm. Mr. Brumbaugh put the pleadings in another envelope and had them mailed to Bruce Weil of Boies Schiller.
I do not know if the mistake was made by the United States Post Office or if our office put the wrong address on the original envelope.
(Emphasis supplied.) In Karen’s “Verified Supplement to Plaintiffs Motion to Vacate,” further details emerged with regard to the postage meter which created the September 29 postmark: “Hasler, the postage meter company, has confirmed that the meter in question had been assigned to the Richman Greer firm. Jack Brumbaugh of the Richman Greer firm has confirmed that the meter in question was used by that firm in 2008.”
Based upon these facts, it can be logically determined that Karen’s counsel served the motion for rehearing on September 24 by mail from Charlottesville, Virginia — as provided in the signed certificate of service contained in the record — but, due to human error, a copy of the motion was delivered to the wrong law firm in Miami, Richman Greer.[7] Thereafter, Richman *372 Greer created a new envelope, affixed the address of Bruce Weil, used its postage meter — which possessed a unique meter number assigned by the meter company— to postmark the envelope with a date of September 29, 2008, and forwarded the motion to the correct law firm, Boies, Schiller & Flexner LLP. Since an attorney from Richman Greer called Karen’s counsel on September 29 to advise him of the erroneously delivered motion, it is reasonable that the envelope created by Richman Greer bore a meter postmark date of September 29, 2008. This sequence of events clearly explains why only one counsel for Philip Morris argued that the motion was served by mail September 29, 2008, and why the motion appeared to have been originally mailed from Miami when in fact it had been timely mailed from Virginia. Neither argument is factually correct, and a careful review of the established facts supports a conclusion that Karen’s motion for rehearing was timely served from Charlottesville, Virginia, on September 24, 2008. This has not been contradicted.
In light of the foregoing, we conclude that Karen’s initial motion for rehearing was timely served, and the Third District erred when it held that the motion was untimely. See Capone, 56 So.3d at 36-37.
Further, Karen’s September 8, 2009, motion for rehearing which was not properly considered below, styled as a “Verified Motion to Vacate and/or Reconsider,” was authorized under Florida Rule of Civil Procedure 1.530. This rule has been consistently construed to authorize rehearings of orders and judgments which are final in nature. See Deal v. Deal, 783 So.2d 319, 321 (Fla. 5th DCA 2001). An order that dismisses an entire cause of action with prejudice constitutes a final judgment. See Raphael v. Carner, 194 So.2d 298, 300 (Fla. 4th DCA 1967) (citing Palm Shores, Inc. v. Nobles, 149 Fla. 103, 5 So.2d 52 (1941)). The parties do not dispute that the circuit court’s September 16, 2008, order that dismissed Karen’s entire action as barred under the Florida Wrongful Death Act was final in nature and, therefore, subject to a motion for rehearing. However, the circuit court’s May 8, 2009, order issued in response to Karen’s initial motion for reconsideration not only vacated the September 16 order of dismissal, but also granted her motions to amend the complaint and to substitute parties. Accordingly, as of May 8, 2009, Karen, in her capacity as personal representative of Frank’s estate, was added as a party plaintiff to the action, and an amended complaint — which alleged not only a claim for wrongful death, but also a claim for survival damages pursuant to section 46.021, Florida Statutes — was pending against Philip Morris.
The September 2, 2009, order — issued by a different judge — which granted Philip Morris’ “Motion to Vacate,” again dismissed Karen’s entire action against Philip Morris. Thus, the September 2, 2009, circuit court order had the effect of a new final judgment order. See Raphael, 194 So.2d at 300. Accordingly, a motion for rehearing from this final order was authorized under rule 1.530. See Deal, 783 So.2d at 321. Karen timely served her motion for rehearing on September 8, 2009, which tolled the time for her to file a notice of appeal of the circuit court’s September 2, 2009, final order. See Fla. R.App. P. 9.020(h). When the circuit court denied the motion to reconsider on November 4, 2009, Karen had thirty days to file a notice of appeal, which she accomplished on December 4, 2009. See Fla. *373 R.App. P. 9.110(b). Therefore, despite the rather convoluted procedural history of events before the circuit court, we hold that Karen’s notice of appeal from the September 2, 2009, dismissal of her case against Philip Morris was timely filed. Accordingly, the Third District had jurisdiction to consider the appeal and issue the decision under review.
Moreover, there is a second basis upon which the Third District had jurisdiction to consider Karen’s appeal. As previously discussed, on September 8, 2009, Karen also served on Philip Morris a Motion for Relief from Judgment pursuant to Florida Rule of Civil Procedure 1.540 along with her motion for rehearing. Subdivision (b) of this rule provides that a motion for relief from judgment “shall be filed within a reasonable time” and, where based upon mistake or inadvertence, “not more than 1 year after the judgment, decree, order, or proceeding was entered or taken.” Karen’s motion for relief from judgment was directed toward the circuit court’s dismissal order and alleged that the order was entered “by mistake or inadvertence.” Therefore, her rule 1.540(b) motion, which was filed on September 14, 2009, was timely-
Karen’s notice of appeal was also timely filed with regard to the circuit court’s denial of her Motion for Relief from Judgment under rule 1.540 on November 4, 2009. Florida Rule of Appellate Procedure 9.130(a)(5) provides that “[o]rders entered on an authorized and timely motion for relief from judgment are reviewable by the method prescribed by this rule.” See also Fla. R.App. P. 9.130(b) (noting that jurisdiction to seek review of an order under subdivision (a)(5) “shall be invoked by filing a notice, accompanied by any filing fees prescribed by law, with the clerk of the lower tribunal within 30 days of rendition of the order to be reviewed”). Karen filed her notice of appeal on December 4, 2009, within thirty days of the denial of her rule 1.540 motion. Accordingly, for this second, independent reason, the Third District had jurisdiction to determine Karen’s appeal.
Based upon the foregoing, we conclude that Philip Morris’ argument that there was a lack of jurisdiction in the Third District due to untimeliness is unfounded. Therefore, it is proper for us to maintain jurisdiction in this case and resolve the conflict issue presented on the merits.
Standard of Review and Relevant Statutory Provisions
Whether a personal injury complaint can be amended upon the death of an injured party plaintiff to add a wrongful death claim or to substitute parties is a pure question of law. Therefore, our standard of review is de novo. See Universal Ins. Co. of N. America v. Warfel, 82 So.3d 47, 57 (Fla.2012).
At issue in this case is the interplay between two different causes of action under the Florida Statutes: the survival action statute, section 46.021, Florida Statutes (2008), and the Florida Wrongful Death Act. Section 46.021, titled “Actions; surviving death of party,” provides:
No cause of action dies with the person. All causes of action survive and may be commenced, prosecuted, and defended in the name of the person prescribed by law.
This law has remained substantively unchanged since 1951. Section 768.19 of the Florida Wrongful Death Act provides:
When the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person, including those occurring on navigable waters, and the event would have entitled the person injured to maintain an action and recover damages if *374 death had not ensued, the person or watercraft that would have been liable in damages if death had not ensued shall be liable for damages as specified in this act notwithstanding the death of the person injured, although death was caused under circumstances constituting a felony.
§ 768.19, Fla. Stat. (2008). Specifically at issue in this case is section 768.20 of the Act, which states:
The [wrongful death] action shall be brought by the decedent’s personal representative, who shall recover for the benefit of the decedent’s survivors and estate all damages, as specified in this act, caused by the injury resulting in death. When a personal injury to the decedent results in death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate. The wrongdoer’s personal representative shall be the defendant if the wrongdoer dies before or pending the action. A defense that would bar or reduce a survivor’s recovery if she or he were the plaintiff may be asserted against the survivor, but shall not affect the recovery of any other survivor.
§ 768.20, Fla. Stat. (2008) (emphasis supplied). Philip Morris contends that the emphasized language requires dismissal of a personal injury action upon the death of the injured party plaintiff and initiation of a separate, independent wrongful death action by the personal representative of the decedent’s estate. To evaluate the validity of this assertion, we review the history of wrongful death actions in Florida as well as the intent of the Act.
The History of Wrongful Death in Florida
Under Florida common law, a cause of action did not exist for wrongful death. An action for wrongful death is solely a creation of the Legislature. See White v. Clayton, 323 So.2d 573, 575 (Fla.1975); Variety Children’s Hosp. v. Perkins, 445 So.2d 1010, 1012 (Fla.1983) (“At common law a person’s right to sue for personal injuries terminated with his death. This created the anomaly that a tortfeasor who would normally be liable for damages caused by his tortious conduct would not be liable in situations where the damages were so severe as to result in death. This paradox was remedied by creating an independent cause of action for the decedent’s survivors.”). This Court stated that the purpose of the statutes that governed wrongful death before the adoption of the Act in 1972 was to “protect the family and dependents of an individual in event of wrongful death.” Garner v. Ward, 251 So.2d 252, 253 (Fla.1971).
However, this Court also explained that the statutes prior to 1972, which authorized both a survival action and a wrongful death action, “were the subject of considerable litigation and judicial construction” because “two separate and independent causes of action could be brought for a negligently caused death.” Martin v. United Security Services, Inc., 314 So.2d 765, 767 (Fla.1975).
First, the administrator of a decedent’s estate could maintain a survival action on behalf of the deceased under Section 46.021, Florida Statutes. The elements of damage recoverable under this statutory provision were the decedent’s pain and suffering, medical expenses, loss of earnings between the time of the accident and his death, and funeral expenses. Punitive damages were also recoverable under this statute.
Second, a widow, a widower, a surviving child, a dependent, or an administrator could maintain a wrongful death action under the prior provisions of *375 Chapter 768, Florida Statutes. The elements of damages recoverable under these prior wrongful death statutory provisions were: A widow’s claim for loss of support, future estate, comfort, companionship, protection, and marital relations, together with the loss of services in taking care of the family and loss of support for the minor children; a widower’s claim for loss of his wife’s consortium and services; a child’s claim for the loss of support, care, comfort, companionship, protection, education, and moral training of his parent or parents; a dependent’s claim for loss of support from the decedent; the parents’ claim for loss of services of their child and for their respective pain and suffering; and the personal representative’s claim by separate action for loss of future estate.
Id. at 767-68 (footnotes omitted).
The intent of the 1972 Act was “to merge the survival action for personal injuries and the wrongful death action into one lawsuit.” Id. at 768; see also Wagner, Vaughan, McLaughlin & Brennan, P.A. v. Kennedy Law Group, 64 So.3d 1187, 1191 (Fla.2011) (noting that the Act “eliminate[d] the multiplicity of suits that resulted from each survivor bringing an independent action and avoid[ed] survivors racing to get the first judgment”). According to this Court in Martin:
In merging the two prior actions, the legislature transferred the items of damage for loss of earnings, medical expenses, and funeral expenses from the survival statute to the new Wrongful Death Act. The claim for pain and suffering of the decedent from the date of injury to the date of death was eliminated. Substituted therefor was a claim for pain and suffering of close relatives, the clear purpose being that any recovery should be for the living and not for the dead.
314 So.2d at 769 (footnote omitted). This purpose of the Act is clearly expressed in a statutory provision titled “Legislative intent,” which provides: “It is the public policy of the state to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer. [The Act is] remedial and shall be liberally construed.” § 768.17, Fla. Stat. (2008). See also Perkins, 445 So.2d at 1012 (“[T]he paramount purpose of the Florida Wrongful Death Act is to prevent a tortfeasor from evading liability for his misconduct when such misconduct results in death.”). Thus, the Act implemented a process of substitution; that is, where an injured plaintiff succumbs to injuries allegedly inflicted by a tortfeasor, the damages that the decedent could have recovered for pain and suffering had he or she not died are, in effect, transferred to the survivors of the decedent. Martin, 314 So.2d at 771 (concluding that “the new Act is effective to consolidate the actions and transfer pain and suffering claims from the decedent to the survivors”).
Despite the merger of the survival action for personal injuries and the wrongful death action, the Court in Martin nonetheless recognized that the survival statute was still applicable to preserve other actions which the decedent may have filed or had filed prior to his death. See id. at 770 n. 18. Based upon this language, the Second District Court of Appeal in 1978 rejected a claim that the Act implicitly abolished the survival statute. See Smith v. Lusk, 356 So.2d 1309, 1311 (Fla. 2d DCA 1978). Instead, the district court held that it was permissible for a personal representative of a decedent’s estate to engage in the “time honored practice” of pleading inconsistent and alternative causes of action — one count for pain and suffering for injuries that did not result in the death of *376 the plaintiff-decedent, and a second count for wrongful death damages where the injury to the decedent ultimately resulted in death. Id.
It is with this historical background of the causes of action in mind that we evaluate the use of the term “abate” in section 768.20.
Abatement Under the Act
The term “abate” is not defined in the Act. See §§ 768.16-.26, Fla. Stat. (2008). Moreover, there is no singular or uniform definition for this word. For example, Black’s Law Dictionary defines abatement as both the “act of eliminating or nullifying” and the “suspension or defeat of a pending action for a reason unrelated to the merits of the claim.” Black’s Law Dictionary 3 (9th ed. 2009). Elimination and suspension are two concepts with indisputably different meanings. It is well established that “[o]ur purpose in construing a statutory provision is to give effect to legislative intent. Legislative intent is the polestar that guides a court’s statutory construction analysis.” Bautista v. State, 863 So.2d 1180, 1185 (Fla.2003). Thus, to determine whether an “abated” personal injury action is completely eliminated or merely suspended under section 768.20, it is necessary to look to the legislative intent behind the Act.
As previously stated, the express intent of the Act is to shift the losses of survivors to the wrongdoer. Section 768.17 also provides the Act “shall be liberally construed” in aid of accomplishing that intent and further explains that the Act is remedial in nature. A remedial statute is one designed to redress an existing grievance, or introduce regulations conducive to the public good. See State ex rel. Gerstein v. Walvick Theatre Corp., 298 So.2d 406, 408 (Fla.1974).
The purpose of the Act is “to prevent a tortfeasor from evading liability for his misconduct when such misconduct results in death.” Perkins, 445 So.2d at 1012. We conclude that an interpretation of the term “abate” that would create additional technical procedural hurdles through which personal representatives must carefully navigate — or risk having a cause of action dismissed and possibly barred forever — would be inconsistent with the stated purpose of the Act. Further, if the legislative intent behind the Act is to provide survivors with recovery, this goal certainly is not served by interpreting the word “abate” to require the dismissal of a personal injury action — regardless of how far the action has progressed or without regard to whether there may be a valid survivor action — and to compel a personal representative to file a completely new, independent wrongful death action. To the contrary, such an interpretation would recommence litigation from the beginning, add meaningless technicalities, add additional costs, expenses and labor, and delay a determination of responsibilities. Moreover, such an interpretation would effectively allow alleged tortfeasors to evade liability for an extended period of time. To give effect to the intent of the Act, we conclude that the word “abate” in section 768.20 must be interpreted in a manner that facilitates — not complicates or convo-lves — the initiation and progression of a wrongful death action on behalf of a decedent’s survivors when the injured party plaintiff in a personal injury action dies.
Based upon this conclusion, we hold that when a personal injury action “abates” pursuant to section 768.20, this does not require that the entire case be deemed immediately void and must be dismissed, or that it “self-destruct[s] like the secret message on a rerun of ‘Mission Impossible.’ ” Niemi, 862 So.2d at 33. In *377 stead, “abate,” as that term is used in section 768.20 must be interpreted to cause the case to be suspended until the personal representative of the decedent’s estate is added as a party to the pending action and receives a reasonable opportunity to amend the complaint to state the damages sought under a wrongful death claim or to state both a claim for survival damages and, in the alternative, wrongful death where — as here — the cause of the decedent’s death may be disputed by the parties. See generally Lusk, 356 So.2d at 1311 (noting that it is a “time honored practice” for parties to plead a survival damages claim and a wrongful death claim in the alternative).
Our holding today is consistent not only with the intent of the Act, but also with our rules of procedure. Florida Rule of Civil Procedure 1.190(e) provides that “[a]t any time in furtherance of justice, upon such terms as may be just, the court may permit any process, proceeding, pleading, or record to be amended or material supplemental matter to be set forth in an amended or supplemental pleading.” Given that the purpose of the Act is to “shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer,” § 768.17, Fla. Stat., it is clearly “in furtherance of justice” to allow the reasonable amendment of pleadings to add a claim for wrongful death, and possibly a claim for survival damages, when the injured plaintiff in a personal injury action dies. Further, Florida Rule of Civil Procedure 1.210(a) provides, in pertinent part, that “[a]ny person may at any time be made a party [to an action] if that person’s presence is necessary or proper to a complete determination of the cause.” When an injured plaintiff in a personal injury action dies, it is both necessary and proper for the personal representative of the decedent’s estate to be named a party in the pending action so that a survival damages claim, a wrongful death claim, or both, may continue to be pursued against an alleged tortfeasor. See Niemi, 862 So.2d at 34 (“Without the substitution of parties, the trial court would never be able to resolve this action by correctly applying sections 768.20 and 46.021 because there would never be a party who could proceed or against whom a dismissal could be entered.”).
The Present Case
Based on the foregoing, we conclude that in the present case the circuit court was correct when it vacated the September 16, 2008, dismissal order and allowed Karen to amend her complaint and substitute herself as a party in her capacity as personal representative of Frank’s estate. However, the Third District’s subsequent determination that the Capones’ personal injury action against Philip Morris could not be amended, but was required to'be dismissed and a completely new and independent wrongful death action commenced, was in error. This conclusion by the appellate court was based upon an interpretation of the word “abate” in section 768.20 that is inconsistent with both the express legislative intent behind the Act and the language specifically included by the Florida Legislature that the Act was to be liberally construed to accomplish that intent. See § 768.17, Fla. Stat. (2008).
CONCLUSION
Accordingly, we quash the decision of the Third District, approve the decision of the Second District in Niemi, and hold that upon the death of a party plaintiff in a personal injury action, the personal representative of the decedent’s estate may be added to the pending action as a party and, thereafter, shall have a reasonable opportunity to file an amended pleading that alleges new or amended claims and *378 causes of action. We emphasize that it is permissible for a personal representative to pursue both a claim for survival damages and an alternative wrongful death claim where the cause of the decedent’s death may be disputed by the parties. See generally Lusk, 356 So.2d at 1311. We disapprove the decision of the Fifth District Court of Appeal in Taylor v. Orlando Clinic, 555 So.2d 876 (Fla. 5th DCA 1989), to the extent it is inconsistent with this opinion.
It is so ordered.
PARIENTE, QUINCE, LABARGA, and PERRY, JJ., concur.
CANADY, J., dissents with an opinion in which POLSTON C.J., concurs.

. In Engle, this Court decertified the plaintiff class, defined as "[a]ll [Florida] citizens and residents, and their survivors, who have suffered, presently suffer or who have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine,” but allowed class members to file actions individually against the defendant cigarette companies and tobacco industry organizations. 945 So.2d at 1256, 1277. In any subsequent action between individual class members and the defendants, certain jury factual findings made against the defendants in previous litigation would be given res judicata effect, provided that the individual action was filed within one year of the mandate in Engle. See id. at 1276-77.

.The parties agree that the "Motion to Reconsider and/or to Vacate” was, in effect, a motion for rehearing filed pursuant to Florida Rule of Civil Procedure 1.530. Throughout the proceedings below, the parties designated filings as motions for reconsideration and motions to vacate without reference to a specific Florida Rule of Civil Procedure under which they were proceeding. The failure of the parties to reference an applicable rule of procedure rendered it more complicated for this Court to determine whether a motion was authorized for tolling purposes. We take this opportunity to remind parties of the importance of specifically referencing an applicable rule when submitting motions, especially where the motion as styled does not track the title of a procedural rule.

. Karen’s counsel also established discrepancies between the envelope that Philip Morris received with the September 29 postmark and the envelopes that he routinely uses in the course of business:
The undersigned counsel did not use that envelope for mailing. It appears to be a computer generated envelope and it uses a postage meter. Plaintiffs firm does not use a postage meter but uses stamps. Plaintiff’s firm does not use computer generated envelopes but uses envelopes printed by a union printing shop_The difference between the envelopes is apparent.

. The motion to vacate filed by Philip Morris was considered by a different circuit court judge than the judge who considered Karen’s initial motion for reconsideration and vacated the September 16, 2008, order of dismissal.

. In 2012, this subdivision was removed from the Florida Rules of Civil Procedure. See In re Amendments to the Florida Rules of Judicial Administration, the Florida Rules of Civil Procedure, the Florida Rules of Criminal Procedure, the Florida Probate Rules, the Florida Rules of Traffic Court, the Florida Small Claims Rules, the Florida Rules of Juvenile Procedure, the Florida Rules of Appellate Procedure, and the Florida Family Law Rules of Procedure—E-Mail Service Rule, 102 So.3d 505, 510 (Fla.2012).

. It is more than interesting to note that a second law firm, Shook, Hardy & Bacon LLP, was also representing Philip Morris in the case but voiced absolutely no complaint or challenge with regard to the motion for rehearing and did not join the Boies position.

. Oddly enough, during the relevant time period, Richman Greer operated its Miami office out of the same building as Shook, Hardy & Bacon LLP. Thus, the copy of the motion for rehearing that was intended for Boies, Schiller & Flexner LLP was accidentally *372 mailed to the same building where a second law firm that also represented Philip Morris in the circuit court proceedings maintained its Miami office.