FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D16-2651

_____

IN RE 73 *ENGLE*-RELATED CASES.

_____


On appeal from the Circuit Court for Duval County.
Russell L. Healey, Judge.


February 8, 2018


OSTERHAUS, J.

Plaintiffs' counsel in this case filed seventy-three *Engle*, personal injury lawsuits on behalf of dead persons just before the statute of limitations expired in January 2008. Most of the named plaintiffs had been dead for many years, some for only months, but none were alive when counsel filed lawsuits in their names. Once the defendant tobacco companies discovered in 2015 that the plaintiffs had been dead from the start of the cases, they moved to dismiss them. This came on the heels of a federal district court decision dismissing hundreds of similar *Engle* cases brought by plaintiffs' counsel on behalf of dead persons in federal court. Similarly, here, the trial court dismissed the cases and in doing so denied plaintiffs' counsel's request for leave to amend the complaints and substitute new party plaintiffs into the actions. Plaintiffs' counsel appealed these decisions. We affirm.

I.

Almost ten years ago in *Engle*, the Florida Supreme Court decertified a class action lawsuit against tobacco companies and required class members to file individual lawsuits within one year in order to receive the benefit of certain *Engle* findings. *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246, 1254 (Fla. 2006). The statute of

limitations established by the court expired in January 2008. Before that date, attorneys from The Wilner Firm and Farah & Farah, P.A., (hereinafter "plaintiffs' counsel") filed many *Engle*-derivative lawsuits. These included the seventy-three lawsuits at issue in this case, which were filed in the Circuit Court for Duval County on behalf of persons who were already deceased. These complaints falsely alleged that the plaintiffs were living smokers whose personal injuries were "permanent and continuing, and . . . [would] be suffered into the future." The pleadings didn't acknowledge that the named plaintiffs were already dead, nor did they allege alternative wrongful death or survival claims. Apparently, plaintiffs' counsel wasn't aware that their clients were already dead.

Because huge numbers of *Engle* cases were filed in the trial court before the *Engle* deadline, the court abated many of them. Nothing much occurred in the seventy-three cases at issue here for many years. But in 2015, after a federal court in Jacksonville dismissed hundreds of *Engle* cases after discovering that they were filed by plaintiffs' counsel on behalf of dead persons in federal court (and was subsequently affirmed by the Eleventh Circuit), *In re Engle Cases*, No. 3:09-cv-10000-J-32JBT, 2013 WL 8115442 (M.D. Fla. Jan. 22, 2013), *aff'd*, 767 F.3d 1082 (11th Cir. 2014), the trial court below issued a questionnaire designed to identify whether plaintiffs' counsel had filed viable *Engle* actions. Answers submitted to the questionnaires indicated that seventy-three of the cases filed by plaintiffs' counsel weren't viable. Just as in the federal actions, plaintiffs' counsel had filed lawsuits on behalf of persons who were already dead. Most of these "plaintiffs" had been dead for more than a decade, since as far back as 1986. Months passed after plaintiffs' counsel answered the court's questionnaire, during which plaintiffs' counsel did not seek to replead the cases or correct their allegations. In November 2015, the defendants moved to dismiss the cases. In their motion, the defendants argued that the personal injury actions filed in the name of dead individuals were void and legal nullities "that confer[red] no jurisdiction on any court and cannot be 'cured'—especially long after the expiration of the applicable limitations period—by motions to substitute or amend." Plaintiffs' counsel responded to the motion in January 2016 by seeking leave to amend the pleadings to substitute the survivors and estates related to the

named plaintiffs, "if any," and to convert the cases to wrongful death actions. But the trial court denied plaintiffs' counsel's request and dismissed the cases with prejudice. Like the federal district court, the trial court considered the plaintiff-less complaints to be legal nullities and providing no basis for new pleadings to "relate back" for purposes of satisfying *Engle*'s 2008 filing deadline. It also concluded that allowing more time for plaintiffs' counsel to seek out valid plaintiffs and amend the complaints now, some eight years after they were first filed, would be unfairly prejudicial to the defendants.

## II.

We review the trial court's decision to dismiss the complaints de novo, *see Capone v. Philip Morris USA, Inc.*, 116 So. 3d 363, 373 (Fla. 2013), and its denial of plaintiffs' counsel's request to amend the seventy-three complaints for abuse of discretion. *Intego Software, LLC v. Concept Dev., Inc.*, 198 So. 3d 887, 892 (Fla. 1st DCA 2016).

We find no error in the trial court's decision to dismiss the personal injury lawsuits filed by plaintiffs' counsel on behalf of dead plaintiffs. The lawsuits filed here were nullities because a dead person cannot file and maintain a lawsuit. It is a basic legal truth that "unless an *in rem* proceeding is before the court, a cause of action must be conducted by or opposed by a 'person' recognized under the laws of this state." *Cocoa Acad. for Aerospace Tech. v. Sch. Bd. of Brevard Cty., Fla.*, 706 So. 2d 397, 398 (Fla. 5th DCA 1998). Dead persons aren't qualified to conduct a suit. *Xtra Super Food Ctr. v. Carmona*, 516 So. 2d 300, 301 (Fla. 1st DCA 1987) ("[D]eceased persons cannot be parties to a judicial or quasi-judicial proceeding."); *see also In re Engle Cases*, 767 F.3d 1082, 1086-87 (11th Cir. 2014) ("As any lawyer worth his salt knows, a dead person cannot maintain a personal injury claim."); *DeArmas v. Blonstein*, 356 So. 2d 1339, 1340 (Fla. 3d DCA 1978) (affirming the dismissal of a personal injury claim where the plaintiff died before the lawsuit was filed).

Corresponding to this legal rule, plaintiffs' counsel had no authority to file and maintain these cases on behalf of the dead plaintiffs. "The death of [the] client terminates the relationship between the attorney and client and the attorney's authority to act

3

by virtue thereof is extinguished." *Rogers v. Concrete Scis., Inc.*, 394 So. 2d 212, 213 (Fla. 1st DCA 1981); *BEC Constr. Corp. v. Gonzalez*, 383 So. 2d 1093, 1094 (Fla. 1st DCA 1980) (same); *see also Schaeffler v. Deych*, 38 So. 3d 796, 801 (Fla. 4th DCA 2010) ("The death of a party limits the authority of counsel to proceed in the underlying action."); *Brickell v. McCaskill*, 106 So. 470, 472 (Fla. 1925) (recognizing that the attorney-client relationship "terminated at [the client's] death"). Thus, the complaints filed by plaintiffs' counsel in these cases failed to confer jurisdiction on the trial court and were legal nullities from the start. *BEC Constr.*, 383 So. 2d at 1094 ("No proper claim ever having been filed, . . . [the court] had no jurisdiction.").

It would be a different case if plaintiffs' counsel, instead of naming dead persons as plaintiffs to personal injury actions, had merely misnamed personal representatives within a wrongful death complaint. That's what happened in *Estate of Eisen v. Philip Morris USA, Inc.*, 126 So. 3d 323 (Fla. 3d DCA 2013). The Third District in *Eisen* allowed amendment of a wrongful death complaint that named an invalid personal representative of an estate as the plaintiff. *Id.* at 336. *Eisen* concluded that the estate "remained at all times the real party in interest," and that the personal representative was simply a "nominal plaintiff[]." *Id.* at 329-30. The court permitted the substitution of a proper nominal plaintiff in place of a nominal plaintiff who lacked a proper capacity to sue. *Id.* at 336; *accord Esposito v. United States*, 368 F.3d 1271 (10th Cir. 2004) (allowing amendment where the complaint erroneously named the decedent, instead of his heirs, in the caption of a wrongful death action). In contrast, the seventy-three cases here do not involve misidentifying or replacing nominal plaintiffs, or other simple party-identification errors within a wrongful death complaint. Indeed, the complaints here featured no estates, survivors, personal representatives, or other nominal plaintiffs. Rather, the complaints stated personal injury claims supposedly filed by the living plaintiffs themselves and claiming ongoing harms at the hands of the tobacco company defendants. *Eisen*'s approval of amending wrongful death complaints in certain situations doesn't control the outcome here.

A different outcome below might also have been required if the plaintiffs had died *after* the complaints were filed. *See Capone*

4

*v. Philip Morris USA, Inc.*, 116 So. 3d 363 (Fla. 2013); *Roden v. R.J. Reynolds Tobacco Co.*, 145 So. 3d 183 (Fla. 4th DCA 2014). In *Capone*, the original plaintiff filed a personal injury action in 2005, but then died in 2006. 116 So. 3d at 365. The original plaintiff's personal representative moved to amend the complaint, substitute herself as party plaintiff, and convert the action into a wrongful death claim. The trial and appeals courts did not permit the substitution and conversion of the case. But the Florida Supreme Court held that the personal representative could substitute herself as a party to the case and convert it into a wrongful death action. *Id.* at 377. The opinion said:

> [U]pon the death of a party plaintiff in a personal injury action, the personal representative of the decedent's estate may be added to the pending action as a party and, thereafter, shall have a reasonable opportunity to file an amended pleading that alleges new or amended claims and causes of action.

*Id.* at 377-78; *accord Roden*, 145 So. 3d at 185 (allowing a personal representative a reasonable opportunity to amend complaint to add a wrongful death claim when the original plaintiff died after filing the lawsuit). We recognize that when personal injury plaintiffs die, the personal representatives of their estates should receive "a reasonable opportunity to amend the complaint to state the damages sought under a wrongful death claim." 116 So. 3d at 377. The rules of civil procedure reflect this same policy presumption. *See Torrey v. Leesburg Reg'l Med. Ctr.*, 769 So. 2d 1040, 1045-46 (Fla. 2000) (recognizing Florida's "liberal rules regarding the amendment of pleadings" and long-standing policy of allowing "cases to be decided on the merits whenever possible"). Florida Rule of Civil Procedure 1.190(a) allows "a party" to amend a pleading upon leave of court and Florida Rule of Civil Procedure 1.260(a)(1) allows courts to order substitution of parties if "a party dies and the claim is not thereby extinguished." Further, "[a]t any time in furtherance of justice, upon such terms as may be just, the court may permit any . . . pleading . . . to be amended." Fla. R. Civ. P. 1.190(e). The rules also provide for amended pleading to relate back to the date of the original pleading for statute of limitations purposes "[w]hen the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set

5

forth or attempted to be set forth in the original pleading." Fla. R. Civ. P. 1.190(c).

But this case differs from *Capone* and *Roden* because no valid, living plaintiffs were ever parties to the actions here. Underlying Florida's preference for deciding "cases" on the merits whenever possible is the existence of a valid case. Here, the cases weren't ever valid. Plaintiffs' counsel filed unconfirmed claims in 2007 and 2008 on behalf of dead persons, then waited eight years to backfill the case with legitimate plaintiffs and claims for the very first time. Florida's preference for deciding cases on the merits says nothing of requiring courts to perpetuate hollow, uninvestigated lawsuits filed by counsel on behalf of dead people. The trial court wasn't required to grant leave to amend complaints under these circumstances where the trial court lacked jurisdiction from the start. *See BEC Constr.*, 383 So. 2d at 1094.

Nor does justice demand a different result. *See* Fla. R. Civ. P. 1.190(e). Before filing suit, plaintiffs' counsel had ethical obligations to confirm the allegations it made and to receive authorization from clients to file the cases. The Florida Supreme Court gave plaintiffs' counsel the same time and opportunity as other counsel to investigate their clients' claims, to find survivors if necessary, and to join relevant estates and personal representatives to lawsuits as needed during the year allotted to file *Engle*-progeny lawsuits. But plaintiffs' counsel didn't verify their claims before filing them. Instead, they alleged patently false things, such as that the plaintiffs' injuries and losses were "continuing [and would] be suffered into the future." Then, once the cases were filed, they let the cases sit on the court's docket for almost eight years, still without checking with their "clients" or their estates to verify the allegations and amend them if necessary.[1] Plaintiffs' counsel ultimately left it to the court to flush out the truth about their supposed clients and their non-viable claims. And even then, once plaintiffs' counsel had disclosed to the

---

[1] There isn't record evidence here of survivors, estates, or personal representatives coming forward to plaintiffs' counsel to disclose the deaths of party plaintiffs, or to press the lawsuits forward themselves.

court that the "plaintiffs" had been dead since before the case was filed, plaintiffs' counsel did not proactively correct their allegations. They waited instead for the defendants to seek dismissal. Under these circumstances, it is easy to conclude that allowing plaintiffs' counsel to amend their pleadings would be an abuse of the privilege to amend and prejudicial to the defendants. *See Bill Williams Air Conditioning & Heating, Inc. v. Haymarket Coop. Bank*, 592 So. 2d 302, 305 (Fla. 1st DCA 1991) (describing circumstances where the privilege to amend should be denied). State legal policy didn't require the court to breathe first-life into these cases in 2016. And dismissal under these circumstances actually "further[ed] justice." Fla. R. Civ. P. 1.190(e).[2] We therefore cannot conclude that the trial court abused its discretion by dismissing these never-valid complaints with prejudice some eight years after the expiration of the statute of limitations.

## III.

For these reasons, we find no error in the court's decision dismissing the seventy-three personal injury cases filed by plaintiffs' counsel on behalf of deceased plaintiffs and denying leave for plaintiffs' counsel to amend the complaints and substitute new party plaintiffs.

AFFIRMED.

ROBERTS and M.K. THOMAS, JJ., concur.

---

[2] Four federal district judges recently signed a 148-page order penalizing plaintiffs' counsel for similar *Engle* litigation conduct to the tune of a $9 million sanction. *See In re Engle Cases*, 3:09-cv-10000-J-WGY-JBT, 2017 WL 4675652, at *2 (M.D. Fla. Oct. 18, 2017) (sanctioning counsel "to account for the immense waste of judicial resources and contempt shown for the judicial process occasioned by maintaining over a thousand non-viable claims").

———————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

———————————

Norwood S. Wilner and Richard J. Lantinberg of The Wilner Firm, Jacksonville; Charles Farah and Eddie Farah of Farah & Farah, P.A., Jacksonville; and Michael Jaffe of Wolf Haldenstein Adler Freeman & Herz LLP, New York, for Appellants.

Geoffrey J. Michael and Daphne O'Connor of Arnold & Porter Kaye Scholer LLP, Washington, D.C., for Appellee Philip Morris USA Inc.; Charles R.A. Morse of Jones Day, New York, for Appellee R.J. Reynolds Tobacco Company.