585 So.2d 1033 (1991)
Harvey GORDON, Appellant,
v.
STATE of Florida, K-Mart Corporation, Etc., et al., Appellees.
No. 90-2497.
District Court of Appeal of Florida, Third District.
August 27, 1991.
*1034 Bernard B. Weksler, Coral Gables, for appellant.
Robert A. Butterworth, Atty. Gen., and Craig B. Willis, Asst. Atty. Gen., Tallahassee; Peters Pickle Niemoeller Robertson Lax & Parsons and Yvette Rhodes Prescott, Miami, for appellees.
Roy D. Wasson, Miami, for Academy of Florida Trial Lawyers as amicus curiae.
Mershon Sawyer Johnston Dunwody & Cole and Edward T. O'Donnell, Miami, for Product Liability Advisory Council as amicus curiae.
Before SCHWARTZ, C.J., and NESBITT and GERSTEN, JJ.
SCHWARTZ, Chief Judge.
By this decision, we uphold the legislature's authority to allot a portion of a punitive damages award to the state.

I
Harvey Gordon was falsely imprisoned and battered by employees of K-Mart Corporation in an incident which occurred in one of its stores on February 16, 1987. In the ensuing action by Gordon against K-Mart, he recovered a jury verdict for $72,500 in compensatory damages and $512,600 in punitive damages. A final judgment for these amounts was entered in Gordon's favor *1035 on July 27, 1989, and post-trial motions were denied on October 5, 1989. Subsequently, in K-Mart Corp. v. Gordon, 565 So.2d 834 (Fla. 3d DCA 1990) (per curiam), the judgment was entirely affirmed.
After the issuance of the mandate, K-Mart, on September 20, 1990, moved to amend the final judgment pursuant to Florida Rule of Civil Procedure 1.540, and the State of Florida moved to intervene as a party plaintiff for the purpose of applying section 768.73(2)(b), Florida Statutes (Supp. 1986).[1] That section, which was part of the Tort Reform and Insurance Act of 1986, which became effective July 1, 1986, requires that 60% of any punitive damages award be payable either to the Public Assistance Trust Fund or, as in this case, to the General Revenue Fund of the state. On October 9, 1990, the trial court granted these motions and entered the following final judgment nunc pro tunc the date of the original judgment:
PURSUANT TO the verdict rendered in this action, it is
ORDERED AND ADJUDGED that the Plaintiff, HARVEY GORDON, recover from the Defendants, K MART CORPORATION, DAVID SPARROCK, and PETER MIRAMBEAU, the sum of TWO HUNDRED SEVENTY-SEVEN THOUSAND THREE HUNDRED AND 00/100 ($277,300.00) with costs to be hereinafter taxed, that shall bear interest at the rate set by Florida Statute for which let execution issue.
Pursuant to section 768.73, Florida Statutes (1987) a judgment is hereby entered in favor of the General Revenue Fund of the State of Florida in the amount of THREE HUNDRED SEVEN THOUSAND TWO HUNDRED AND 00/100 DOLLARS ($307,200.00) which sum represents sixty (60) percent of the punitive damage award.
2. This Court hereby directs the Clerk to amend the Final Judgment accordingly.
Gordon now appeals from that portion of the amended judgment which, in effect, transfers $307,200.00 from him to the State of Florida.[2] He raises the dual contentions that section 768.73(2)(b) is unconstitutional and that the manner in which his initial judgment was amended to reflect the state's recovery was procedurally invalid. We find that neither of these contentions has merit.

II
With all due respect,[3] we find that Gordon's constitutional attacks upon the statute are very insubstantial:

1. No deprivation of due process right to property.

The appellant's first claim  that the statute constitutes an unconstitutional "taking" of a property right without due process  is wholly without merit. This is true simply because he has no cognizable, protectable right to the recovery of punitive damages at all. Unlike the right to compensatory damages, see Smith v. Department of Ins., 507 So.2d 1080 (Fla. 1987); University of Miami v. Echarte, 585 So.2d 293 (Fla. 3d DCA 1991), the allowance of punitive damages is based entirely upon considerations of public policy. Accordingly, it is clear that the very existence of an inchoate claim for punitive damages is subject to the plenary authority of the ultimate policy-maker under our system, the legislature. In the exercise of that discretion, it may place conditions *1036 upon such a recovery or even abolish it altogether. Ross v. Gore, 48 So.2d 412 (Fla. 1950); cf. Pacific Mutual Life Ins. Co. v. Haslip, ___ U.S. ___, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). As our court clearly stated in Ross:
As to question No. 1, plaintiff contends that the statute has "changed the amount of damages recoverable, and thus has unconstitutionally impaired appellant's rights." There is no merit to this contention. As to the denial of "punitive damages," such damages are allowed, not as compensation to a plaintiff, but as a deterrent to others inclined to commit a similar offense, and their allowance depends on malice, moral turpitude, wantonness or outrageousness of tort. Dr. P. Phillips & Sons, Inc., v. Kilgore, 152 Fla. 578, 12 So.2d 465 [(1943)]. The right to have punitive damages assessed is not property; and it is the general rule that, until a judgment is rendered, there is no vested right in a claim for punitive damages. Kelly v. Hall et al., 191 Ga. 470, 12 S.E.2d 881 [(1941)]; Osborn v. Leach, 135 N.C. 628, 47 S.E. 811 [(1904)]. It cannot, then, be said that the denial of punitive damages has unconstitutionally impaired any property rights of appellant.
Ross, 48 So.2d at 414; accord Louisville & Nashville R.R. v. Street, 164 Ala. 155, 51 So. 306 (1909); Smith v. Hill, 12 Ill.2d 588, 147 N.E.2d 321 (1958).
In addition, because the incident in question, much less the entry of the final judgment, occurred subsequent to the effective date of the statute, the case is governed also by the rules that (a) where an existing statute provides that funds recovered under it are subject to a prior claim, a party cannot thereafter obtain a vested right to that claim, see United States Fidelity & Guar. Co. v. Department of Ins., 453 So.2d 1355 (Fla. 1984), and that (b) even substantive rights and obligations created by statute do not vest until the accrual of the cause of action which gives rise to them. L. Ross, Inc. v. R.W. Roberts Const. Co., 466 So.2d 1096 (Fla. 5th DCA 1985), aff'd, 481 So.2d 484 (Fla. 1986). For all these reasons, we summarily reject the contention that the state has invalidly taken a property right of the plaintiff. Ross, 48 So.2d at 412.

2. No violation of substantive due process rights.

We find Gordon's alternative contention that section 768.73(2)(b) is "arbitrary" and "unreasonable" and therefore somehow deprives him of his rights to substantive due process on that basis even less persuasive. To successfully surmount such an objection, it need only be shown that the statute under attack bears a rational relation to a legitimate legislative interest or objective. Abdala v. World Omni Leasing, Inc., 583 So.2d 330 (Fla. 1991); Vildibill v. Johnson, 492 So.2d 1047 (Fla. 1986). At least two such bases of 768.73(2)(b) are readily apparent:
(a) it is clear that the present statute[4] is founded upon and directly serves one of the most basic justifications for the existence of punitive damages in the first place: to serve as punishment for what amounts to a public wrong and thus to protect the public by inhibiting future such conduct. Ingram v. Pettit, 340 So.2d 922, 924 (Fla. 1976) ("It has long been established that the availability of punitive damages is reserved to those kinds of cases where private injuries partake of public wrongs. The intentional infliction of harm, or a recklessness which is the result of an intentional act, authorize punishment which may deter future harm to the public by the particular party involved and by others acting similarly."); Florida Southern R.R. v. Hirst, 30 Fla. 1, 11 So. 506 (1892); 22 Am.Jur.2d Damages § 734 (1988) ("The intentional or reckless infliction of harm may be likened to culpable negligence in criminal cases and authorizes the infliction of punishment which may deter future harm to the public. So viewed, punitive damages are allowed on grounds of public policy and *1037 in the interest of society and for the public benefit."). The allotment of a portion of these funds directly to the State as a representative of the public whose interest the award is thus largely designed to serve, may obviously have been viewed by the legislature as an appropriate means of effecting that legitimate purpose.[5] We agree with the thrust of Justice Shores's opinion in Fuller v. Preferred Risk Life Ins. Co., 577 So.2d 878, 886-87 (Ala. 1991) (Shores, J., concurring specially), that, on this basis, the courts may make such an allocation even in the absence of statutory authorization:
If the court concludes that the amount is not so excessive as to deprive the defendant of his property in contravention of § 13, Ala. Constitution 1901, it nevertheless may also determine that it would be in the best interest of justice to require the plaintiff to accept less than all of the amount and to require the defendant to devote a part of the amount to such purposes as the court may determine would best serve the goals for which punitive damages are allowed in the first place: vindication of the public and deterrence to the defendant and to others who might commit similar wrongs in the future.
* * * * * *
The courts, however, have inherent authority to allocate punitive damages, with jurisdiction over both plaintiff and defendant, by reducing the amount that the plaintiff is to receive to less than the full amount of the verdict, and directing the defendant to pay a part of a punitive damages award to the state general fund or any special fund devoted to the furtherance of justice on behalf of all the people. To do so in proper cases could serve the purpose for which punitive damages were authorized to a greater degree than would allowing the plaintiff to receive the entire amount.
Fuller, 577 So.2d at 886-87.
(b) The legislative history indicates that one reason for the provision in question was to discourage punitive damages claims by making them less remunerative to the plaintiff and his attorneys. See § 768.73(4), Fla. Stat. (Supp. 1986).[6],[7] Since the legislature had every right to conclude, as a matter of public policy, that such suits should be discouraged  even eliminated  this affords a perfectly legitimate ground for upholding the statute.[8],[9]

III
Turning to the procedural objections to the effectuation of the statute by substituting *1038 the state for Gordon as to $307,200.00 of the punitive damages award, we also find no merit.
1. First, it is clear that the trial judge properly exercised her discretion, even after judgment, to permit the state to intervene as a plainly interested party plaintiff. Wags Transp. System v. City of Miami Beach, 88 So.2d 751 (Fla. 1956).
2. The amendment to the initial judgment, to reflect the clear and mandatory terms of a controlling statute, was properly effected to correct "an error therein arising from oversight" under Florida Rule of Civil Procedure 1.540(a),[10] see Stuckey v. Northern Propane Gas Co., 874 F.2d 1563 (11th Cir.1989) (verdict corrected to properly apportion damages according to Georgia law); United States v. Griffin, 782 F.2d 1393 (7th Cir.1986) (interest rate in judgment correctable after property sold at auction); O'Tell v. New York, New Haven & Hartford R.R., 236 F.2d 472 (2nd Cir.1956) (judgment amended to reflect deduction from damages of sum plaintiff received for executed release; omitted in jury charge prior to verdict); First Nat'l Bank v. National Airlines, Inc., 167 F. Supp. 167 (S.D.N.Y. 1958) (judgment overlooking statute awarding costs upon dismissal of suit amendable), or to correct a plain "mistake" under Florida Rule of Civil Procedure 1.540(b).[11] See Taylor v. United States, 821 F.2d 1428 (9th Cir.1987) (government did not waive claim to statutory limitation on noneconomic damages for professional negligence where it failed to assert it prior to judgment), cert. denied, 485 U.S. 992, 108 S.Ct. 1300, 99 L.Ed.2d 510 (1988); Federal Deposit Ins. Corp. v. Castle, 781 F.2d 1101 (5th Cir.1986) (retroactive social security benefits subject to statutory limitation asserted for first time in Rule 60(b) motion); Meadows v. Cohen 409 F.2d 750, 753 (5th Cir.1969) (trial court properly amended judgment under Fed.R.Civ.P. 60(b) to statutorily limit disability benefit government had failed to bring to trial judge's attention).
Finally, the court properly proceeded under 1.540 notwithstanding our affirmance of the earlier judgment, Ohio Casualty Group v. Parrish, 350 So.2d 466 (Fla. 1977); Avant v. Waites, 295 So.2d 362 (Fla. 1st DCA 1974),[12] and without obtaining this court's permission to do so. Ohio Casualty, 350 So.2d at 466.
Affirmed.[13]
NOTES
[1] Section 768.73(2)(b) provides:

If the cause of action was based on personal injury or wrongful death, 60 percent of the award shall be payable to the Public Medical Assistance Trust Fund created in s. 409.2662; otherwise, 60 percent of the award shall be payable to the General Revenue Fund.
[2] K-Mart has paid the amount of the judgment including the entire punitive award into the registry of the court. The compensatory award and the 40% of the punitive damages to which Gordon is indisputably entitled have been released to him. Accordingly, the only controversy is between Gordon and the state as to the entitlement to the 60% allocation provided by the statute.
[3] We have noticed that this phrase is almost always employed, as it is here, when very little, if any, respect is actually deemed "due" to the contention or institution to which it is directed.
[4] Several other states have enacted similar statutes. See Colo. Rev. Stat. § 13-21-102(4) (1987); Ga. Code Ann. § 51-12-5.1(e)(2) (Supp. 1987); Ill. Rev. Stat. Ch. 110, para. 2-1207 (Supp. 1987); Iowa Code Ann. § 668A.1(2)(b) (West Supp. 1987); Mo.Stat.Ann. § 537.675 (1987).
[5] Of course, since the legislature could have abolished the punitive damage claim altogether, or under this rationale, required that all of the award be payable to the state, the plaintiff can hardly complain of the determination that 60% (as opposed to 30% or 90%) was appropriate.
[6] Section 768.73(4) provides:

Claimant's attorney's fees, if payable from the judgment, shall, to the extent that they are based on the punitive damages, be calculated based only on the portion of the judgment payable to the claimant as provided in subsection (2). Nothing herein shall be interpreted as limiting the payment of attorney's fees based upon the award of damages other than punitive damages.
[7] Because he is not a party to this controversy, see Warshaw-Seattle, Inc. v. Clark, 85 So.2d 623 (Fla. 1955), we do not consider here the personal claim of Gordon's attorney that the statutory scheme invalidly interferes with his rights under his fee contract with his client. But see Gamble v. Wells, 450 So.2d 850 (Fla. 1984), which is directly contrary to this contention.

Without expressing any opinion on the issue, however, we note the possibility of a separate quantum meruit claim by the attorney against the state for the services rendered in recovery of the 60% of the punitive damages on its behalf. See Government Employees Ins. Co. v. Graff, 327 So.2d 88 (Fla. 1st DCA 1976); Fuller, 577 So.2d at 886-87 (Shores, J., specially concurring).
[8] We relegate to a footnote the claim that Gordon obtained a constitutionally vested right to 100% of the punitive damages when the initial judgment for that amount was entered in his favor. Because that judgment was obviously erroneously entered as in contravention of a contrary statute, this contention is equivalent to stating that no judgment may constitutionally be corrected or reversed on appeal.
[9] In deciding that § 768.73(2)(b) is valid, we have not overlooked McBride v. General Motors Corp., 737 F. Supp. 1563 (M.D.Ga. 1990). We find its brief discussion of the present issue, 737 F. Supp. at 1578, completely unpersuasive.
[10] This was the view correctly adopted by the trial judge below:

THE COURT: I don't think this is a clerical mistake. I think it's a mistake on my part but not a clerical one, in other words in typing. I did not miswrite anything or whoever prepared the order did not miswrite anything. It was an oversight in the sense that I did not realize that it was meant to be interpreted that it would exclude the statute. And that was not my intention in any way, shape or form, you know. So it was an oversight on my part in that regard.
[11] The 1.540 motion was timely under either 1.540(a), which provides that it may be invoked "at any time," or under 1.540(b), since it was filed within a year after the denial of the post-trial motions. See Pruitt v. Brock, 437 So.2d 768 (Fla. 1st DCA 1983). See generally Franklin v. Franklin, 573 So.2d 401 (Fla. 3d DCA 1991).
[12] We therefore deny Gordon's motion to enforce the prior mandate in the original appeal, case no. 89-2617.
[13] We certify to the Supreme Court that this case involves a question of great public importance as to the constitutionality of § 768.73(2)(b), Fla. Stat. (Supp. 1986).