608 So.2d 800 (1992)
Harvey GORDON, Petitioner,
v.
STATE of Florida, et al., Respondents.
No. 78638.
Supreme Court of Florida.
November 12, 1992.
*801 Bernard B. Weksler of the Law Offices of Bernard B. Weksler, Coral Gables, John Beranek of Aurell, Radey, Hinkle & Thomas, Tallahassee, Florida; and Walter G. Campbell of Krupnick, Campbell, Malone & Roselli, Fort Lauderdale, for petitioner.
Robert A. Butterworth, Atty. Gen., and Craig B. Willis, Asst. Atty. Gen., Tallahassee, and Yvette Rhodes Prescott of Peters, Pickle, Niemoeller, Robertson, Lax & Parsons, Miami, for respondents.
Roy D. Wasson, Miami, amicus curiae, for The Academy of Florida Trial Lawyers.
Jack W. Shaw, Jr. of Osborne, McNatt, Shaw, O'Hara, Brown & Obringer, Jacksonville, amicus curiae, for Florida Defense Lawyers Ass'n.
Edward T. O'Donnell of Herzfeld and Rubin, Miami, amicus curiae, for Product Liability Advisory Council, Inc.
PER CURIAM.
We review a question certified to be of great public importance: whether subsection 768.73(2)(b), Florida Statutes (Supplement 1986), is constitutional. Gordon v. State, 585 So.2d 1033, 1038 n. 13 (Fla. 3d DCA 1991). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
Harvey Gordon was falsely imprisoned and battered by employees of K-Mart Corporation in an incident in one of its stores on February 16, 1987. Gordon recovered a jury verdict against K-Mart for $72,500 in compensatory damages and $512,600 in punitive damages, which was affirmed on appeal. K-Mart Corp. v. Gordon, 565 So.2d 834 (Fla. 3d DCA 1990). After the mandate was issued, K-Mart, on September 20, 1990, moved to amend the final judgment pursuant to Florida Rule of Civil Procedure 1.540, and the State moved to intervene to assert its interest in sixty percent of the punitive damages award pursuant to subsection 768.73(2)(b), Florida Statutes (Supplement 1986), which provides:
If the cause of action was based on personal injury or wrongful death, 60 percent of the award shall be payable to the Public Medical Assistance Trust Fund created in s. 409.2662; otherwise, 60 percent of the award shall be payable to the General Revenue Fund.
This provision became effective on July 1, 1986, as part of the Tort Reform and Insurance Act of 1986. Ch. 86-160, §§ 52, 70, Laws of Fla. The district court upheld the trial court's award to the State. Gordon v. State, 585 So.2d 1033 (Fla. 3d DCA 1991). Gordon contends that subsection (2) is unconstitutional. Gordon's attorneys contend that subsection 768.73(4), Florida Statutes (Supplement 1986), also is unconstitutional. We disagree and approve the decision below.
As the district court noted:
[Gordon] has no cognizable, protectable right to the recovery of punitive damages at all. Unlike the right to compensatory damages, the allowance of punitive damages is based entirely upon considerations of public policy. Accordingly, it is clear that the very existence of an inchoate claim for punitive damages is subject to the plenary authority of the ultimate policy-maker under our system, the legislature. In the exercise of that discretion, it may place conditions upon such a recovery or even abolish it altogether.
Gordon, 585 So.2d at 1035-36 (citations omitted). This Court said in Ross v. Gore, 48 So.2d 412, 414 (Fla. 1950):
The right to have punitive damages assessed is not property; and it is the general rule that, until a judgment is *802 rendered, there is no vested right in a claim for punitive damages. It cannot, then, be said that the denial of punitive damages has unconstitutionally impaired any property rights of appellant.
(Citations omitted.) The incident here occurred subsequent to the effective date of the statute and thus the award clearly is governed by the statute.
We agree with the trial court that no substantive due process violation occurred. The statute under attack here bears a rational relationship to legitimate legislative objectives: to allot to the public weal a portion of damages designed to deter future harm to the public and to discourage punitive damage claims by making them less remunerative to the claimant and the claimant's attorney.
We also have considered the other constitutional claims raised and suffice it to say that the statute does not violate the right to trial by jury, does not constitute a tax on judgments, does not deny equal protection and is not a special law.
We further agree that the trial court's amendment to the initial judgment was proper because Florida Rule of Civil Procedure 1.540(b) authorizes relief from judgment based on "mistake" or "inadvertence," if the motion is made "not more than one year after the judgment." We approve Pruitt v. Brock, 437 So.2d 768 (Fla. 1st DCA 1983) (holding that the one-year limit of rule 1.540(b) runs from the disposition of a timely-filed motion for rehearing). Although judgment in this case was entered on July 27, 1989, posttrial motions were not denied until October 5, 1989. The rule 1.540 motion was filed on September 20, 1990.
We moreover find no merit to counsel's claim that subsection 768.73(4), providing that attorney's fees, "if payable from the judgment, shall, to the extent that they are based on the punitive damages, be calculated based only on the portion of the judgment payable to the claimant." Valid laws in effect at the time a contract is made enter into and become part of the contract as if expressly incorporated into the contract. State ex rel. Select Tenures, Inc. v. Raulerson, 129 Fla. 346, 176 So. 270 (1937). Gordon's cause of action accrued after the effective date of section 768.73 and the contingent fee contract was entered into after the statute went into effect; hence the statute did not impair any preexisting contractual rights of Gordon's attorney.
Accordingly we answer the question certified in the affirmative and approve the decision of the district court.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, GRIMES, KOGAN and HARDING, JJ., concur.
SHAW, J., concurs in part and dissents in part with an opinion.
SHAW, Justice, concurring and dissenting.
I agree that subsection 768.73(4) is constitutional. I cannot agree that subsections 768.73(2) and (5) are constitutional.
This Court has said that "[w]hen the right to collect money under the terms of a decree has vested, it is not within the province of a court to divest such right." Blocker v. Ferguson, 47 So.2d 694, 698 (Fla. 1950). We have noted that "[i]t is also well settled that the judgment of an appellate court, where it issues a mandate, is a final judgment in the cause and compliance therewith by a lower court is a purely ministerial act."[1]O.P. Corp. v. Village of N. Palm Beach, 302 So.2d 130, 131 (Fla. 1974). Mr. Gordon had a vested property right by the time the State intervened to claim its lion's share of the punitive damage award.
We said in Department of Law Enforcement v. Real Property, 588 So.2d 957, 960 (Fla. 1991):
The basic due process guarantee of the Florida Constitution provides that "[n]o person shall be deprived of life, liberty or *803 property without due process of law." Art. I, § 9, Fla. Const. Substantive due process under the Florida Constitution protects the full panoply of individual rights from unwarranted encroachment by the government. To ascertain whether the encroachment can be justified, courts have considered the propriety of the state's purpose; the nature of the party being subjected to state action; the substance of the individual's right being infringed upon; the nexus between the means chosen by the state and the goal it intended to achieve; whether less restrictive alternatives were available; and whether individuals are ultimately being treated in a fundamentally unfair manner in derogation of their substantive rights.
The encroachment here is unjustified under this standard.
Our sister court, in Kirk v. Denver Publishing Co., 818 P.2d 262 (Colo. 1991), held that a similar statute (giving one-third of a judgment for exemplary damages to the state general fund) unconstitutional. It found the statute to be a forced taking of property unrelated to any constitutionally permissible governmental interest and, therefore, violative of the federal and state constitutional proscriptions against taking private property without just compensation. The court said:
In our view, forcing a judgment creditor to pay to the state general fund one-third of a judgment for exemplary damages in order to fund services which have already been funded by other revenue-raising measures, and without conferring on the judgment creditor any benefit or service not furnished to other civil litigants not required to make the same contribution, amounts to an unconstitutional taking of the judgment creditor's property in violation of the Taking Clause of the United States and the Colorado Constitutions.
Id. at 272. The court noted that this is particularly true where "the judgment itself results exclusively from the judgment creditor's time, effort, and expense in the litigation process without any assistance whatever from the state." Id. The court also found significant "the absence of any demonstrable nexus between, on the one hand, any alleged governmental interest in punishing and deterring ... tortious conduct and, on the other, the statutory imposition of the forced contribution on the person injured by the wrongful conduct." Id. at 273. I find these observations equally pertinent here: the State did nothing to earn its sixty-percent share of the punitive damage award; and a nexus between deterrence and the forced contribution from the injured person is absent.
The United States Supreme Court held unconstitutional, in Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980), a Florida statute giving $100,000 in interest accruing on moneys placed in the registry of the court to counties as a fee for using the courts.[2] It said:
Neither the Florida Legislature by statute, nor the Florida courts by judicial decree, may accomplish the result the county seeks simply by recharacterizing the principal as "public money"... .
... [A] State, by ipse dixit, may not transform private property into public property without compensation... . This is the very kind of thing that the Taking Clause of the Fifth Amendment was meant to prevent. That Clause stands as a shield against arbitrary use of governmental power.
Id. at 164, 101 S.Ct. at 452. The court held constitutional, by contrast, a federal statute deducting one and one-half percent from the first five million dollars of an arbitration award entered by a federal claims tribunal, as reimbursement for administrative expenses. United States v. Sperry Corp., 493 U.S. 52, 110 S.Ct. 387, 107 L.Ed.2d 290 (1989). The court declined to define what percentage of an award would be "too great a take" because it *804 found that "by any standard of excessiveness," one and one-half percent was not too great. Id. 493 U.S. at 62-63, 110 S.Ct. at 395. I agree that one and one-half percent of a limited portion of an award is not a taking; the instant statute, by contrast, is "too great a take" "by any standard of excessiveness," and, therefore, a taking.
I also view section 768.73(5), Florida Statutes (Supplement 1986), as constitutionally infirm, because it contravenes our state constitutional guarantee of the right to trial by jury. Our constitution provides: "The right of trial by jury shall be secure to all and remain inviolate." Art. I, § 22, Fla. Const. It is the jury's function to determine the amount of damages, including punitive damages, to be awarded in this case. See Barry v. Edmunds, 116 U.S. 550, 565, 6 S.Ct. 501, 509, 29 L.Ed. 729 (1886) ("[N]othing is better settled than that, in such cases as [intentional torts], and other actions for torts where no precise rule of law fixes the recoverable damages, it is the peculiar function of the jury to determine the amount by their verdict."). The statutory mandate to keep secret from the jury the State's sixty-percent take of the punitive damage award prevents the jury from performing its proper function. Moreover, when information essential to the jury's determination of damages is kept from it, due process is denied, in violation of our state and federal constitutions. Art. I, § 9, Fla. Const.; U.S. Const. amend. XIV.
For these reasons I dissent.
NOTES
[1] The final judgment in this case was affirmed by the district court on August 7, 1990, and the mandate issued on September 19, 1990, before the State's postjudgment intervention.
[2] The unconstitutional statute, in relevant part, provided: "All interest accruing from moneys deposited shall be deemed income of the office of the clerk of the circuit court investing such moneys... ." § 28.33, Fla. Stat. (1973).