# Supreme Court of Florida

_____

No. SC19-601
_____

**MARY E. SHEFFIELD, etc.,**
Petitioner,

vs.

**R.J. REYNOLDS TOBACCO COMPANY,**
Respondent.

November 18, 2021

CANADY, C.J.

This case presents a question concerning the application of a statutory provision enacted to impose certain limitations on the award of punitive damages. In 1999, as part of a broader tort reform act, the Legislature amended section 768.73, Florida Statutes, to among other things presumptively preclude an award of punitive damages against a defendant in a civil action if "punitive damages have previously been awarded against that defendant in any state or federal court in any action alleging harm from the same act or single course of conduct for which the claimant seeks

compensatory damages." Ch. 99-225, § 23, at 1417, Laws of Fla. The Legislature made the amendments applicable "to all causes of action arising after" October 1, 1999. *Id.* § 23, at 1418; *see id.* § 36, at 1428 (setting the effective date for the act). The certified conflict issue is whether the amendments apply to *Engle* progeny[1] wrongful death actions in which the smoking-injured decedent died after October 1, 1999. We have jurisdiction. *See* art. V, § 3(b)(4), Fla. Const.

Petitioner, Mary E. Sheffield—as personal representative of the estate of her deceased husband, Valton Sheffield, who died in 2007 as the result of lung cancer diagnosed in 1994—seeks review of *R.J. Reynolds Tobacco Co. v. Sheffield*, 266 So. 3d 1230 (Fla. 5th DCA 2019), in which the Fifth District Court of Appeal held that the 1999 amendments applied to her *Engle* progeny wrongful death action against Respondent, R.J. Reynolds Tobacco Company (Reynolds), on which "numerous prior punitive damages awards" had been imposed previously. *Id.* at 1232. The Fifth District generally reasoned that "arising" is synonymous with "accruing,"

---

1. *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246 (Fla. 2006).

that a wrongful death "cause of action" accrues upon death, and that because Mr. Sheffield died after October 1, 1999, the cause of action here necessarily accrued or arose after that date. Consequently, the Fifth District concluded that the 1999 amendments, by their plain terms, applied. *Id.* at 1233-34.

The Fifth District certified conflict with the First District Court of Appeal's decision in *R.J. Reynolds Tobacco Co. v. Allen*, 228 So. 3d 684 (Fla. 1st DCA 2017), the Second District Court of Appeal's decision in *R.J. Reynolds Tobacco Co. v. Evers*, 232 So. 3d 457 (Fla. 2d DCA 2017), and the Fourth District Court of Appeal's decision in *R.J. Reynolds Tobacco Co. v. Konzelman*, 248 So. 3d 134 (Fla. 4th DCA 2018), each of which applied the pre-amended version of the statute in similar wrongful death actions. *Allen*, *Evers*, and *Konzelman* all effectively held that *Engle* progeny cases are "different" and that the wrongful death actions related back to the *Engle* class action, which began in 1994.

Mrs. Sheffield's main argument for why we should quash *Sheffield* is a non-*Engle*-specific one, namely that when a personal injury action (or potential one) becomes a wrongful death action, the "causes of action" remain the same—i.e., that the causes of

- 3 -

action here are Mr. Sheffield's and that they arose in 1994 when he was diagnosed with lung cancer.  Because our caselaw weighs against Mrs. Sheffield, and because *Allen*, *Evers*, and *Konzelman* fail to justify an *Engle*-only exception to the 1999 amendments, we approve the result in *Sheffield* and disapprove *Allen*, *Evers*, and *Konzelman.*

We begin by reviewing the relevant statutory amendments.  We then briefly review *Engle*.  Next, we address the certified conflict cases.  Then we review the background of this case.  Lastly, we explain our conclusion that the wrongful death action here is covered by the 1999 amendments.

## 1999 AMENDMENTS

Chapter 99-225, Laws of Florida, added the following underlined language to section 768.73:

> (2)(a) Except as provided in paragraph (b), punitive damages may not be awarded against a defendant in a civil action if that defendant establishes, before trial, that punitive damages have previously been awarded against that defendant in any state or federal court in any action alleging harm from the same act or single course of conduct for which the claimant seeks compensatory damages. . . .
> (b) In subsequent civil actions involving the same act or single course of conduct for which punitive damages have already been awarded, if the court

- 4 -

> determines by clear and convincing evidence that the amount of prior punitive damages awarded was insufficient to punish that defendant's behavior, the court may permit a jury to consider an award of subsequent punitive damages. . . . Any subsequent punitive damage awards must be reduced by the amount of any earlier punitive damage awards rendered in state or federal court.

Ch. 99-225, § 23, at 1417-18, Laws of Fla. The chapter law also provided that the amendments "shall be applied to all causes of action arising after the effective date of th[e] act," *id.* § 23, at 1418, which was set as October 1, 1999, *id.* § 36, at 1428.

The amendments may have been a response to *W.R. Grace & Co.–Conn. v. Waters*, 638 So. 2d 502 (Fla. 1994). There, this Court "acknowledge[d] the potential for abuse when a defendant may be subjected to repeated punitive damage awards arising out of the same conduct," but concluded that it was "unable to devise a fair and effective solution." *Id.* at 505. Regardless of whether *Waters* was the impetus for the amendments, the purpose of the amendments is clear—to presumptively bar successive awards of punitive damages against a defendant based on "the same act or single course of conduct." § 768.73(2), Fla. Stat.

## *ENGLE*

*Engle v. Liggett Group., Inc.*, 945 So. 2d 1246 (Fla. 2006), involved a class action lawsuit filed in 1994 "seeking compensatory and punitive damages against major domestic cigarette companies and two industry organizations . . . for injuries allegedly caused by smoking." *Id.* at 1256. The class was eventually certified and defined as follows: "All [Florida] citizens and residents, and their survivors, who have suffered, presently suffer or who have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine." *Id.* In 1998, the trial court issued a three-phase trial plan, Phase I of which was "to consider the issues of liability and entitlement to punitive damages for the class as a whole." *Id.* Phase I ended with "a verdict for the Engle Class and against [the defendants] on all counts," *id.* at 1256-57, including a punitive damages award of $145 billion, *id.* at 1257. The defendants appealed, and the Third District reversed "with instructions that the class be decertified." *Id.* at 1258.

On discretionary review, this Court quashed the Third District's decision in all respects except for the reversal of the punitive damages award. *Id.* at 1254. That award, according to

this Court, was premature and in any event excessive. *Id.* at 1262-65. In otherwise quashing the decision, this Court "conclude[d] that the trial court did not abuse its discretion in certifying the class," *id.* at 1267, and that "the cut-off date for class membership" would be November 21, 1996, *id.* at 1275, with "[t]he critical event" being "when the disease or condition first manifested itself," rather than diagnosis, *id.* at 1276. This Court also held that certain Phase I common liability findings against the defendants could "stand," *id.* at 1255, but "that continued class action treatment" was "not feasible," *id.* at 1268. Accordingly, this Court decertified the class but established a one-year period for "plaintiffs within the class," *id.* at 1277, to bring "individual damages actions," *id.* at 1269, at which the approved Phase I findings—and *only* those findings— would be "given res judicata effect," *id.* at 1277. Those individual actions are commonly known as *Engle* progeny cases.

### *ALLEN, EVERS,* **AND** *KONZELMAN*

In *Allen,* which originated as an *Engle* progeny personal injury action, the First District began its analysis of the 1999 amendments by noting that "[t]ypically, the applicable version of a statute is the one 'in effect when the cause of action arose.' " *Allen,* 228 So. 3d at

- 7 -

689 (quoting *D'Angelo v. Fitzmaurice*, 863 So. 2d 311, 314 n.9 (Fla. 2003)). *Allen* then treated the terms "arise" and "accrue" as synonyms, noting that "[i]n many wrongful death actions, the cause of action accrues on the date of a decedent's death." *Id.* But *Allen* concluded that "*Engle*-progeny cases are different," reasoning that because the decedent's injury "manifested" before the *Engle* class cut-off date, the decedent was entitled to "the res judicata benefits of the *Engle* class." *Id.*

*Allen* next explained that when the decedent died, the personal representative was "allowed to proceed in the same suit." *Id.* at 690 (citing *Capone v. Philip Morris USA, Inc.*, 116 So. 3d 363 (Fla. 2013)). From there, *Allen* cited *In re Engle Cases*, 45 F. Supp. 3d 1351 (M.D. Fla. 2014), for the proposition that "[j]ust as the wrongful death action was allowed to relate back to [the] date of the *Engle* class for statute of limitations purposes, the applicable statutory law also relates back to the *Engle* class." *Allen*, 228 So. 3d at 690.

Lastly, *Allen* looked in part to the Fourth District's decision in *R.J. Reynolds Tobacco Co. v. Schoeff*, 178 So. 3d 487 (Fla. 4th DCA 2015), *quashed*, 232 So. 3d 294 (Fla. 2017). *Allen* reasoned that because the decedent's causes of action accrued before the 1999

amendments took effect, she "had a substantive right to seek punitive damages under the then-existing standard" and that applying the 1999 amendments "would impair those substantive rights." *Allen*, 228 So. 3d at 690 (citing *Alamo Rent–A–Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1358 (Fla. 1994)).

In *Evers*, which originated as an *Engle* progeny wrongful death action, the Second District largely relied on *Allen*. *Evers*, 232 So. 3d at 462. *Evers* held that "all *Engle*-progeny complaints," *id.*, in which the plaintiff is "entitled to the res judicata effect of the *Engle* class," *id.* at 463, "relate[] back to the 1994 *Engle* class-action complaint," *id.* at 462, such that the plaintiff's "cause of action [is] not controlled by the 1999 amendment[s]," *id.* at 463.

In *Konzelman*, the Fourth District simply cited *Allen* and *Evers* in concluding that the 1999 amendments do not "appl[y] in an *Engle* progeny personal injury suit that is converted into a wrongful death action." *Konzelman*, 248 So. 3d at 135.[2]

---

2. *Konzelman* also cited *R.J. Reynolds Tobacco Co. v. Buonomo*, 138 So. 3d 1049 (Fla. 4th DCA 2013), *quashed on other grounds*, 41 Fla. L. Weekly S113 (Fla. Jan. 26, 2016), an *Engle* progeny wrongful death action involving a 2008 death. But the parties on appeal in *Buonomo* "d[id] not dispute" that the 1999

## BACKGROUND OF THIS CASE

The relevant facts here are not in dispute: Mr. Sheffield smoked cigarettes manufactured and sold by Reynolds; he quit smoking in the mid-1980's; he eventually developed three unrelated lung cancers (1994, 2003, and 2006); and he died in 2007. Mrs. Sheffield then filed a wrongful death action in which she alleged *Engle* class membership and included "counts sounding in negligence, strict liability, fraud by concealment, and conspiracy to commit fraud." *Sheffield*, 266 So. 3d at 1232.

After Mrs. Sheffield and Reynolds "stipulated that Mr. Sheffield's 1994 lung cancer was a contributing cause of his death," *id.* at 1235, the only relevant issue was whether to instruct the jury on the 1999 amendments. The trial court agreed with Mrs. Sheffield that *Allen* should control and instructed the jury on the law that existed prior to the 1999 amendments. The jury later determined that Mr. Sheffield was a member of the *Engle* class and "returned one verdict finding liability against Reynolds and

---

amendments were inapplicable. *Id.* at 1052. So *Buonomo* is of no assistance.

awarding $1.8 million in compensatory damages, and a second verdict awarding $5 million in punitive damages." *Id.* at 1232.

### The Fifth District's decision

On appeal, the Fifth District agreed with Reynolds that the trial court should have applied "the 1999 version of section 768.73." *Id.* And because the 1999 amendments potentially shielded Reynolds from any punitive damages award, the Fifth District "reverse[d] for further proceedings that may include a new trial on punitive damages." *Id.*

The Fifth District began by looking to the statutory language, which the court ultimately viewed as unambiguous. *Id.* at 1233. Then, citing this Court's decision in *Schoeff v. R.J. Reynolds Tobacco Co.*, 232 So. 3d 294, 301 (Fla. 2017), which held that the amended 2011 version of the comparative fault statute controlled in that *Engle* progeny wrongful death case, the Fifth District reasoned that "when it comes to deciding which version of a statute shall be applied, *Engle*-progeny cases are no different than any other cases." *Sheffield*, 266 So. 3d at 1233.

From there, the Fifth District—as *Allen* had done—treated "arise" and "accrue" as synonyms, noting that "Florida law generally

- 11 -

holds that the applicable version of a statute is the version in effect at the time a cause of action accrues," *id.*, and that "Florida law does not distinguish between when a cause of action accrues and when a cause of action arises," *id.* (quoting *Philip Morris USA Inc. v. Martin*, 262 So. 3d 769, 773 (Fla. 4th DCA 2018)).  But unlike *Allen*, the Fifth District adhered to what it viewed as "clear" Florida caselaw establishing that "a cause of action for wrongful death accrues"—or arises—"on the date of the decedent's death," which here was in 2007.  *Id.* at 1234.

The Fifth District then addressed *Allen*, *Evers*, and *Konzelman*, focusing principally on *Allen*.  The Fifth District opined that *Allen* failed to recognize the distinction this Court drew in *R.J. Reynolds Tobacco Co. v. Ciccone*, 190 So. 3d 1028 (Fla. 2016), between "manifestation" for purposes of *Engle* class membership and "accrual" of the relevant cause of action.  *Sheffield*, 266 So. 3d at 1236.  And the Fifth District opined that *Allen* misread *In re Engle Cases* and had thus misapplied the relation-back doctrine.  *Id.* at 1236-37.  After then dismissing *Evers* and *Konzelman* as having agreed with *Allen*, the Fifth District certified conflict with those three decisions.  *Id.* at 1237-38.

## ANALYSIS

The question presented is whether the 1999 amendments to section 768.73 apply to *Engle* progeny wrongful death actions in which the decedent died after October 1, 1999. This question is a pure question of law, which we review de novo. *See Townsend v. R.J. Reynolds Tobacco Co.*, 192 So. 3d 1223, 1225 (Fla. 2016).

As we have explained, this Court "adhere[s] to the 'supremacy-of-text principle': 'The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.' " *Advisory Op. to Governor re Implementation of Amendment 4, the Voting Restoration Amendment*, 288 So. 3d 1070, 1078 (Fla. 2020) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)). Here, the statute is abundantly clear in its scope; it applies to *all*—not some—causes of action that arise after October 1, 1999. The only question, then, is *when* the "causes of action" here arose.

To be clear, Mrs. Sheffield nowhere seeks an *Engle* exception to the plain language of the 1999 amendments. Indeed, she explains that "her arguments would be the same" in any case involving "conduct and injuries which predated the amendments,

but resulted in a post-1999 death." Nor does she suggest that the Legislature lacked the authority to presumptively bar successive awards of punitive damages. *See Alamo Rent-A-Car, Inc. v. Mancusi,* 632 So. 2d 1352, 1358 (Fla. 1994) ("[A] plaintiff's right to a claim for punitive damages is subject to the plenary authority of the Legislature."). Instead, her primary argument is that, in 1994, Mr. Sheffield had fully mature causes of action against Reynolds that were continuously pursued by the *Engle* class and then by her—i.e., that the "causes of action" here are Mr. Sheffield's and that the 1999 amendments thus do not apply to the punitive damages sought by her. We disagree. Because our caselaw establishes that wrongful death actions are distinct from personal injury actions and that there can be no wrongful death "cause of action" absent a death, we conclude that the causes of action here arose when Mr. Sheffield passed away in 2007 and are thus plainly governed by the 1999 amendments.

### "Causes of action"

Mrs. Sheffield's primary argument involves the potential interplay between the survival statute and the Wrongful Death Act. On the one hand, the survival statute applies when a person dies

- 14 -

while possessing a cause of action against another person, but the harm caused by the other person is not the cause of death. The survival statute provides in full:

> **46.021 Actions; surviving death of party.**—No cause of action dies with the person. All causes of action survive and may be commenced, prosecuted, and defended in the name of the person prescribed by law.

§ 46.021, Fla. Stat. (2020).

On the other hand, if—as was stipulated here—a person dies from harm caused by another person, then the Wrongful Death Act applies. *See* §§ 768.16-768.26, Fla. Stat. (2020). The Wrongful Death Act establishes the following statutory "[r]ight of action":

> **768.19 Right of action.**—When the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person, including those occurring on navigable waters, and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued, the person or watercraft that would have been liable in damages if death had not ensued shall be liable for damages as specified in this act notwithstanding the death of the person injured, although death was caused under circumstances constituting a felony.

§ 768.19, Fla. Stat. The Wrongful Death Act also explicitly provides that a wrongful death action is *not* a continuation of a personal injury action. *See* § 768.20, Fla. Stat. ("When a personal injury to

- 15 -

the decedent results in death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate."). Indeed, as Reynolds notes, a wrongful death action involves "its own limitations period, § 95.11(4)(d), Fla. Stat., [and] its own panoply of remedies, § 768.21, Fla. Stat."

Not surprisingly, then, this Court has long recognized that a wrongful death action—or a wrongful death "cause of action" for that matter—accrues or arises upon death. *See, e.g., Fulton Cnty. Adm'r v. Sullivan*, 753 So. 2d 549, 552 (Fla. 1999) ("In Florida, a cause of action for wrongful death accrues on the date of death . . . ."); *St. Francis Hosp. v. Thompson*, 31 So. 2d 710, 711 (Fla. 1947) ("Plaintiff's cause of action did not accrue by reason of the wrongful act alone. It took a wrongful act and death to give plaintiff a cause."); *cf. Stokes v. Liberty Mut. Ins. Co.*, 213 So. 2d 695, 700 (Fla. 1968) ("[A] right of action for wrongful death [under the Wrongful Death of Minors Act] can *arise only after* the live birth and subsequent death of the child." (emphasis added)).

We recognize there is some degree of continuity between a wrongful death action and a personal injury action. *See Laizure v. Avante at Leesburg, Inc.*, 109 So. 3d 752, 761 (Fla. 2013) ("[I]n

wrongful death actions in Florida, the defendant's liability flows from actions toward the decedent . . . ."). Indeed, we recognize that a wrongful death action is, to a certain extent, "derivative." *Id.* at 760 ("The right of the survivors to recover is predicated in the Act on the decedent's right to recover."); *see also Variety Children's Hosp. v. Perkins*, 445 So. 2d 1010, 1012 (Fla. 1983) ("Since there was no right of action existing at the time of death, under the statute no wrongful death cause of action survived the decedent."). But the "derivative" aspect of a wrongful death action—i.e., the requirement that the decedent must have been able to "recover damages if death had not ensued," § 768.19, Fla. Stat.—is, in this Court's words, "simply a regulation of, and a limitation on, the . . . statutory right of action created." *Toombs v. Alamo Rent-A-Car, Inc.*, 833 So. 2d 109, 112 (Fla. 2002) (quoting *Fla. East Coast Ry. v. McRoberts*, 149 So. 631, 633 (Fla. 1933)).

We have thus never held—nor do we today—that a personal representative who brings a wrongful death action based on, say, a theory of "negligence," § 768.19, Fla. Stat., is prosecuting the decedent's cause of action for negligence. On the contrary, we have long described the Wrongful Death Act as "creating an independent

- 17 -

cause of action." *Variety Children's Hosp.*, 445 So. 2d at 1012; *see Toombs*, 833 So. 2d at 111 ("[T]his Court has long characterized the [Wrongful Death] Act as creating a new and distinct right of action from the right of action the decedent had prior to death."); *id.* at 118 ("[A]n action for wrongful death . . . involves different rights of recovery and damages . . . ."); *see also Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1280, 1282 (11th Cir. 2003) (noting that "[t]he accrual date for a wrongful death action [in Florida] is the date of death," and explaining "that a products liability case simply is not similar to a wrongful death case under Florida law"). And so, although there must be a "tort underlying the wrongful death action," *Toombs*, 833 So. 2d at 115, it is more appropriate to say that a personal representative brings a "wrongful death claim . . . based on alleged negligence," *Laizure*, 109 So. 3d at 756, or "a negligence-based wrongful-death cause of action," *Wallace v. Dean*, 3 So. 3d 1035, 1052 (Fla. 2009), than to say that the personal representative prosecutes the decedent's cause of action. Mrs. Sheffield's argument cannot be reconciled with this substantial body of caselaw.

We are not persuaded by Mrs. Sheffield's reliance on *Philip Morris USA, Inc. v. Douglas*, 110 So. 3d 419 (Fla. 2013). There, this Court, in addressing why "res judicata" was "the proper term" for applying the approved *Engle* Phase I findings in an *Engle* progeny wrongful death action, explained that "the claims in *Engle* and the claims in individual actions like this case are *the same causes of action* between *the same parties*." *Id.* at 432; *but see R.J. Reynolds Tobacco Co. v. Ciccone*, 190 So. 3d 1028, 1046 (Fla. 2016) (Polston, J., dissenting) (opining that the majority's decision there to distinguish "manifestation" and "accrual" was irreconcilable with *Douglas*'s "res judicata" holding). Mrs. Sheffield cites *Douglas* not for an *Engle* exception to the 1999 amendments but rather for the proposition that the causes of action in a wrongful death action must be those of the decedent. But she overlooks that the *Engle* class, as certified, included then-living "[Florida] citizens and residents," like Mr. Sheffield, "*and their survivors*." *Engle*, 945 So. 2d at 1256 (emphasis added). *Engle* thus encompassed wrongful death actions like this one. And we have not been asked to, nor do we, opine on the correctness of *Engle* or any of this Court's *Engle* progeny decisions, including *Douglas*.

- 19 -

Nor are we persuaded by Mrs. Sheffield's reliance on *Martin v. United Security Services., Inc.*, 314 So. 2d 765 (Fla. 1975), and *Capone v. Philip Morris USA, Inc.*, 116 So. 3d 363 (Fla. 2013). In *Martin*, the relevant issue was whether "Florida's new Wrongful Death Act" (the new Act), as revised in 1972, "constitutionally eliminated claims under the survival statute . . . for . . . punitive damages." 314 So. 2d at 766-67 & n.1. A few years prior to the new Act, this Court in *Atlas Properties, Inc. v. Didich*, 226 So. 2d 684 (Fla. 1969), held that the survival statute "allow[ed] the recovery of punitive damages." *Id.* at 688. *Martin* subsequently held "that punitive damages [were] not eliminated by the [new] Act and may be recovered once for each death." 314 So. 2d at 767. In doing so, *Martin* at one point explained that the new Act consolidated or merged "survival and wrongful death actions," which prior to that time could simultaneously be brought in negligent death cases, and that the new Act "substitute[d] for a decedent's pain and suffering the survivors' pain and suffering as an element of damages." *Id.* *Martin* also noted that the new Act evinced "an unmistakable legislative intent to incorporate . . . the survival action formerly maintainable under Section 46.021." *Id.* at

- 20 -

770. But *Martin* nowhere held that an action under the new Act was a continuation of the decedent's causes of action. Far from it. Instead, *Martin* explained that the new Act "provide[d] for *a cause of action*" and that it "establishe[d] who may bring the action and the manner in which it is brought." *Id.* at 768 (emphasis added); *see also id.* at 767 (explaining that the new Act had consolidated "*two separate and independent causes of action*" (emphasis added)). At most, *Martin* stands for the proposition that, although not enumerated in the list of damages recoverable in a wrongful death action, *see* § 768.21, Fla. Stat., a claim for punitive damages nevertheless may be pursued in a wrongful death action, largely for "public policy reason[s]." *Martin*, 314 So. 2d at 772. But that proposition does not help Mrs. Sheffield, as the issue here is not whether she could make a claim for punitive damages but rather whether her claim was governed by the 1999 amendments. It is.[3]

---

3. To the extent Mrs. Sheffield can be said to argue that a wrongful death action potentially involves causes of action of the enumerated survivors *and* of the decedent, *see* § 768.21(6), Fla. Stat. (listing the damages the "personal representative may recover for the decedent's estate"), and even if we were to view a wrongful death action in that manner, the record nevertheless shows that this case involves only damages *she* sustained as a "survivor."

- 21 -

In *Capone*, which involved an *Engle* progeny wrongful death action, the relevant issue was a procedural one, namely whether "a personal injury action can be amended after the death of a party plaintiff to add a wrongful death claim" and whether "the personal representative of the decedent's estate may be substituted as a party in the pending action." *Capone*, 116 So. 3d at 368. Largely relying on *Martin* and the notion that the new Act had merged two actions, *Capone* answered both questions in the affirmative, *id.* at 377-78, ultimately construing the term "abate" in section 768.20 to mean that the personal injury action was merely suspended until the personal representative can be "substitute[d]" as a party and given a reasonable opportunity to amend, *id.* at 377. *Capone* clearly has nothing to do with the issue here. And in any event, Mrs. Sheffield overlooks language in *Capone* undermining her argument. *See, e.g.*, *id.* at 373 (noting that the survival statute and the Wrongful Death Act involve "different causes of action").

- 22 -

In the end, our caselaw compels the conclusion that the "causes of action" in this case arose after October 1, 1999.[4]

**"Arising" versus "accruing"**

Mrs. Sheffield alternatively argues that the Fifth District erroneously treated the terms "arising" and "accruing" as synonyms. We disagree. And in any event, she effectively treats the terms as synonyms.

The terms "arise" and "accrue," standing alone, can certainly carry different meanings. Indeed, whereas "accrue" generally refers to the completion of the final element of the cause of action such that the statute of limitations begins to run, *see, e.g., Hearndon v. Graham*, 767 So. 2d 1179, 1184-85 (Fla. 2000), the term "arise" can be used in more contexts. For example, one might say that "questions arise," but one would not say that "questions accrue."

Nevertheless, courts in Florida, including this Court, have long used the term "arise" as a substitute for "accrue." *E.g., Metro. Dade Cnty. v. Jones Boatyard, Inc.,* 611 So. 2d 512, 513-14 (Fla. 1993)

_____

4. Given our disposition of Mrs. Sheffield's primary argument, we see no reason to address her argument that the 1999 amendments do not apply "retrospectively."

(holding that statute that expressly "applie[d] only to causes of action arising on or after July 1, 1986," did not "by its terms . . . apply . . . where the underlying cause of action accrued prior to its effective date" (first quoting § 768.71(2), Fla. Stat., and then quoting *Mudano v. St. Paul Fire & Marine Ins. Co.*, 543 So. 2d 876, 877 (Fla. 4th DCA 1989)).  Here, where the term "arising" is used in a temporal context—i.e., *when* a cause of action arises—we have no reason to believe the Legislature did otherwise.  Indeed, a cause of action cannot arise on a day that predates there being a cause of action.  *Cf. Barnett v. Dep't of Fin. Servs.*, 303 So. 3d 508, 515 (Fla. 2020) (addressing the meaning of the statutory phrase "claim or judgment . . . arising out of the same incident or occurrence," and explaining that "[n]o claim exists . . . until the cause of action accrues" and that "[a] claim does not [arise] until the last element accrues").  And, absent a death, there can be no "cause of action" for wrongful death.  *See St. Francis Hosp.*, 31 So. 2d at 711 ("It took a wrongful act and death to give plaintiff a cause.").

Not surprisingly, then, Mrs. Sheffield fails to offer *any* Florida case that distinguishes the two terms in this or any relevant context.  Instead, she argues that the caselaw that *has* treated the

- 24 -

terms interchangeably, including in this context, should be disregarded. *See, e.g., Philip Morris USA Inc. v. Martin,* 262 So. 3d 769, 773 (Fla. 4th DCA 2018) ("[T]he terms 'accrue' and 'arise' are synonymous with respect to when a cause of action comes into existence . . . ."); *Lumbermens Mut. Cas. Co. v. August,* 509 So. 2d 352, 353 (Fla. 4th DCA 1987) (same), *quashed on other grounds,* 530 So. 2d 293 (Fla. 1988); *Meehan v. Celotex Corp.,* 466 So. 2d 1100, 1102 (Fla. 3d DCA 1985) (citing examples of Florida cases in which "the terms 'arise' and 'arose' have consistently been used interchangeably with the terms 'accrue' and 'accrued' "), *quashed on other grounds,* 523 So. 2d 141 (Fla. 1988). We, of course, reject that approach, as it would be far more sensible to presume the Legislature was aware of the judicial usage of the two terms than to presume the Legislature implicitly drew a sharp distinction between the two terms in this context. *Cf. Jones v. ETS of New Orleans, Inc.,* 793 So. 2d 912, 917 (Fla. 2001) ("[T]he Legislature is presumed to have adopted prior judicial constructions of a law unless a contrary intention is expressed in the new version." (quoting *City of Hollywood v. Lombardi,* 770 So. 2d 1196, 1202 (Fla. 2000))).

In any event, Mrs. Sheffield effectively treats the terms synonymously. Namely, after noting that "arise" means to "originate," she asserts that "[t]his case plainly 'originates,' 'stems' or 'results' from Mr. Sheffield's 1994 lung cancer." But linking the term "arise" to Mr. Sheffield's lung cancer is just another way of arguing that wrongful death causes of action "arise" when the decedent's own causes of action "accrue." And as explained above, we reject that argument.

**Certified conflict cases**

Mrs. Sheffield finally argues that the certified conflict cases, which were decided based on reasoning she does not advance here, "reached the correct result." As outlined above, none of the certified conflict cases drew any distinction between "arising" and "accruing" or suggested that wrongful death "causes of action" can arise or accrue before death. Instead, beginning with *Allen*, they largely turned on the notion that "*Engle*-progeny cases are different." *Allen*, 228 So. 3d at 689. But the analysis underpinning *Allen* is flawed. Accordingly, we disapprove *Allen* as well as the other two certified conflict cases, which largely relied on *Allen*.

As the Fifth District here aptly noted, *Allen* not only erroneously focused on "manifestation" rather than when a cause of action arises, but *Allen* additionally turned in part on a misreading of *In re Engle Cases*. That case involved *Engle* progeny personal injury actions in which the plaintiffs died but the personal representatives failed to move to amend the complaints until after the two-year limitations period for bringing wrongful death actions. *In re Engle Cases*, 45 F. Supp. 3d at 1353. The federal district court simply held "that the wrongful death claims in question relate[d] back to the filing of the original [*Engle* progeny personal injury] complaint" so as to not be "time barred." *Id.* Nothing in *In re Engle Cases* supports the proposition seemingly attributed to it by *Allen*, namely that statutory amendments enacted after 1994 are per se inapplicable in *Engle* progeny cases.

*Allen* also relied on a Fourth District decision that this Court in *Schoeff*, 232 So. 3d 294, subsequently quashed. *Schoeff* held in relevant part that the amended 2011 version of the comparative fault statute, by its plain terms, governed that *Engle* progeny wrongful death case and that the Fourth District had "improperly" applied the 1994 version of the statute. *Id.* at 301. As the Fifth

- 27 -

District here observed, the relevant teaching of *Schoeff* is that there is no absolute bar preventing statutory amendments from applying to *Engle* progeny cases. *See Sheffield*, 266 So. 3d at 1233 ("*Engle*-progeny cases are no different than any other cases.").

Lastly, *Allen*, citing this Court's decision in *Mancusi*, held that application of the 1999 amendments would impair "substantive rights." *Allen*, 228 So. 3d at 690. Here, Mrs. Sheffield presents no such argument. For good reason. *Mancusi* simply does not support the decision reached in *Allen*.

As an initial matter, *Mancusi* is distinguishable. In *Mancusi*, the relevant issue was whether a 1987 amendment to the punitive damages statute, made "effective October 1, 1987," should apply to a cause of action that "arose during September 1986." *Mancusi*, 632 So. 2d at 1358. This Court declined to apply that amendment, in part because the Legislature had not "clearly expresse[d] its intent that the statute" be applied to existing causes of action. *Id.* Here, of course, and in the certified conflict cases, the relevant causes of action arose *after* the effective date of the 1999 amendments, which are clear in their scope.

Moreover, *Allen* ignored important language in *Mancusi* explaining that "a plaintiff's right to a claim for punitive damages is subject to the plenary authority of the Legislature." *Id.* For that proposition, *Mancusi* cited *Gordon v. State*, 608 So. 2d 800 (Fla. 1992), where this Court upheld the constitutionality of a statute that required 60 percent of a claimant's punitive damages award *to be payable to the State* "[i]f the cause of action was based on personal injury or wrongful death." *Id.* at 801 (quoting § 768.73(2)(b), Fla. Stat. (Supp. 1986)). *Gordon* explained that "the allowance of punitive damages is based entirely upon considerations of public policy" and that "an inchoate claim for punitive damages is subject to the plenary authority of . . . the Legislature." *Id.* (quoting *Gordon v. State*, 585 So. 2d 1033, 1035 (Fla. 3d DCA 1991)). And *Gordon* further explained that "[t]he right to have punitive damages assessed is not property; and it is the general rule that, until a judgment is rendered, there is no vested right in a claim for punitive damages." *Id.* at 801-02 (quoting *Ross v. Gore*, 48 So. 2d 412, 414 (Fla. 1950)).[5] Because *Allen*'s

---

5. In 1994, the year in which, according to Mrs. Sheffield, the causes of action here purportedly arose, the Legislature continued

"substantive rights" analysis nowhere accounted for any of this caselaw, we reject that analysis.

## CONCLUSION

We hold that the relevant 1999 amendments to section 768.73 apply in *Engle* progeny wrongful death actions in which the decedent died after the effective date of the amendments. Accordingly, we approve the result in *Sheffield* and disapprove the certified conflict cases of *Allen*, *Evers*, and *Konzelman*.

It is so ordered.

POLSTON, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.
LABARGA, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

---

to require that a portion of any punitive damages award "[i]n any civil action" be paid to the State. *See* ch. 92-85, §§ 2-3, Laws of Fla. (requiring that 35 percent of any such award be payable to the State and establishing a repeal date of July 1, 1995); *see also id.* § 4 (making the relevant amendment applicable "to pending cases and causes of action in which a judgment has not been entered").

LABARGA, J., dissenting.

The majority ignores the unique nature of *Engle*[6] and treats *Engle* progeny cases like traditional civil actions. In doing so, the majority proceeds as if *Engle* progeny cases are completely divorced from the procedural and substantive findings in *Engle*, and it starkly contradicts what this Court has long held: *Engle is* different. For these reasons, I dissent.

Because a jury has already made findings regarding general causation, addiction of cigarettes, strict liability, fraud by concealment, civil-conspiracy-concealment, breach of implied warranty, breach of express warranty, and negligence, *Engle* progeny cases are unlike other civil actions where the plaintiff is required to prove the defendants' common liability. *Id.* at 1255. Entitled to the benefit of the extensive *Engle* findings, *Engle* progeny plaintiffs need only address individual issues such as legal causation, comparative fault, and damages. *Id.* at 1268. *Engle* progeny wrongful death actions are, therefore, *continuations* of the

---

6. *Engle v. Liggett Grp., Inc.,* 945 So. 2d 1246, 1255 (Fla. 2006).

- 31 -

*Engle* litigation. *See Philip Morris USA, Inc., et al., v. Douglas*, 110 So. 3d 419, 432 (Fla. 2013) ("*Engle* allowed members of the decertified class to *pick up litigation of the approved six causes right where the class left off* . . . . [T]he claims in *Engle* and the claims in individual actions . . . are *the same causes of action* between *the same parties* . . . .") (first emphasis added). This is precisely why we acknowledged *Engle* was of "unprecedented significance," *Soffer v. R.J. Reynolds Tobacco Co.*, 187 So. 3d 1219, 1227 (Fla. 2016) (quoting *Philip Morris USA v. Halgren*, 124 So. 3d 350, 354 (Fla. 2d DCA 2013)), with a "procedural posture . . . unique and unlikely to be repeated." *Engle*, 945 So. 2d at 1270 n. 12.

Sidestepping this Court's precedent on the purported basis that "we have not been asked to . . . opine on the correctness of *Engle* or any of this Court's *Engle* progeny decisions, including *Douglas*," majority op. at 19, the majority treats *Engle* progeny cases as entirely new actions with entirely new trials. But, it is clear these cases do not begin the litigation anew; the plaintiffs' claims cannot be untethered from the class complaint, the Phase I findings, or the substantive law underlying both. Notwithstanding the *Engle* class's decertification, class members' claims—whether

brought as personal injury or wrongful death causes of action—are entitled to the res judicata effect of the Phase I findings—findings made *before* the effective date of the 1999 amendments. *See Engle*, 945 So. 2d at 1256. Therefore, *Engle* progeny "causes of action," *see* section 768.73(5), Florida Statutes (1999), did *not* arise after the 1999 amendments.

It is undisputed that Mrs. Sheffield is a class member as Mr. Sheffield's "survivor," and *Engle* resolved substantive elements of her claims. Her causes of action could not have arisen in 2007 because she "pick[ed] up litigation of" the "*same causes of action*" already partially litigated years earlier by "*the same parties.*" *Douglas*, 110 So. 3d at 432. The "causes of action" here necessarily arose *before* Mr. Sheffield's 2007 death—*not*, as the majority concludes, on the date of his death.

I respectfully dissent.

Application for Review of the Decision of the District Court of Appeal Certified Direct Conflict of Decisions

Fifth District - Case No. 5D17-2521

(Orange County)

David J. Sales and Daniel R. Hoffman of David J. Sales, P.A., Sarasota, Florida; and Melvin B. Wright and Lisa Ann Thomas of Colling, Gilbert, Wright & Carter, LLC, Orlando, Florida,

for Petitioner

William L. Durham II and Val Leppert of King & Spalding, LLP, Atlanta, Georgia; Troy A. Fuhrman and Marie A. Borland of Hill Ward Henderson, Tampa, Florida; and Charles R.A. Morse of Jones Day, New York, New York, Jason T. Burnette and Brian Charles Lea of Jones Day, Atlanta, Georgia, and Noel J. Francisco of Jones Day, Washington, District of Columbia,

for Respondent

John S. Mills of Bishop & Mills, PLLC, Jacksonville, Florida, Courtney Brewer and Bailey Howard of Bishop & Mills, PLLC, Tallahassee, Florida; and Bryan S. Gowdy, on behalf of Florida Justice Association, Jacksonville, Florida,

for Amici Curiae Florida Justice Association and Citizens Against Cigarette Manufacturers

Scott A. Chesin of Shook Hardy & Bacon L.L.P., New York, New York,

for Amicus Curiae Philip Morris USA Inc.